New Galt House Co. v. Chapman.

Wherefore, the judgment is reversed with directions for a new trial in conformity with this opinion. Petition for rehearing by appellee overruled.

---

CASE 67.—ACTION BY ELLA MAY CHAPMAN AGAINST THE NEW GALT HOUSE COMPANY FOR DAMAGES FOR PERSONAL INJURIES.—February 5.

# New Galt House Co. v. Chapman

124   527
f137  359

Appeal from Jefferson Circuit Court ('C. P. Branch, Third Division).

MATT O'DOHERTY, Judge.

Judgment for plaintiff. Defendant appeals. Reversed.

Master and Servant—Injury to Servant—Negligence—Customary Equipment of Appliances.—A servant, injured by the starting of a dumb waiter while she was taking dishes from it, cannot recover of the master, on the ground that it was negligence not to have it equipped with a device preventing its being started while one was taking things from it, it never having been so equipped, and there being no evidence that they were usually or generally so equipped.

BARKER & WOODS for appellant.

## POINTS AND AUTHORITIES.

1. Whatever injury appellee received, was the result of the risk assumed by her in the employment, and a peremptory instruction should have been given. (McCormick Har. Mach. Co. v. Liter, 23 Ky. Law Rep. 2154; Kelly v. Barber Asphalt Co., 93 Ky., 363; Wilson's Adm'r v. Chess & Waymond Co., 25 Ky. Law Rep., 1655; Williams v. Railroad, 111 Ky., 822; Mann v. Moore, 24 Ky. Law Rep., 253; Needham v. Railroad, 85 Ky., 423; King v.

New Galt House Co. v. Chapman.

Lumber Company, 93 Mich., 172, 53 N. W., 10; Wagner v. Chemical Company, 147 Pa., 475; 1 Labatt on Master and Servant, sections 259, 263, 264, 274, 274a.)

2. The instructions submitted by the court did not present to the jury the real issue tried in the evidence. The instructions offered by appellant should have been given. (Thomas v. Railroad, 79 Ky., 160; L. & N. R. R. Co. v. Morton, 28 Ky. Law Rep., 355, Georgia Railroad v. Cartledge, 42 S. E., 405; Mississippi Logging Co. v. Schneider, 20 C. C. A., 390; Delaware Iron Works v. Nuttal, 119 Pa., 149; Ross v. Pearson Cordage Co., 164 Mass., 257; Sweeney v. Berlin Envelope Co., 101 N. Y., 520; Kohn v. McNulta, 147 U. S., 238, 241.)

3. The injury of appellee was the result solely of the negligence of a fellow-servant, and the master is not liable. Dana v. Blackburn, 28 Ky. Law Rep., 695; Fort Hill Stone Co. v. Orm's Adm'r, 84 Ky., 182; Volz v. C. & O. Ry., 95 Ky., 188; L. & N. R. R. Co. v. Edmonds, 23 Ky. Law Rep., 1049.)

4. The defense of fellow-servant is available under a general denial, and need not be specially pleaded. The appellant was entitled to an instruction on that point. (2 Thompson on Trials, sec. 2310 et sec.; Sheehan v. Prosser, 55 Mo. App., 569; Kaminski v. Tudor Iron Works, 167 Mo., 462; Wilson v. Charleston, etc., R. R., 28 S. E., 91; Louisville Ry. Co. v. Meglemery, 25 Ky. Law Rep., 1587; Section 95, Kentucky Code of Practice; Thompson on Negligence, vol. 4, sec. 4877; Bliss on Code Pleading, 432.)

5. The damages are excessive.

KINNEY & FITZGERALD for appellee.

AUTHORITIES CITED.

Pfisterer v. J. H. Peter & Co., 78 So. West'n Rep., 452; Bates-Rogers Const. Co. v. Dunn, 93 So. West'n Rep., 1032; Ohio Val. Ry. Co. v. McKinley, 33 So. West'n Rep., 187; Shemwell v. Owensboro & N. R. Co., 78 So. West'n Rep., 448; Wilson v. Chess & Wymond Co., 78 So. West'n Rep., 454; L. & N. Co. v. Foley, 21 So. West'n Rep., 866, 94 Ky., 224; Bogenschutz v. Smith, 1 So. West'n Rep., 580; Western Union Tel. Co. v. Holtby, 93 So. West'n Rep., 653; Dow Wire Works Co. v. Morgan, 96 So. West'n Rep., 530; Ashland Coal Iron & R'way Co. v. Wallace's Adm'r, 42 So. West'n Rep., 746; Bowling Green Stone Co. v. Capshaw, 64 So. West'n Rep., 508; Cooper's Adm'r v. Oscar Daniels Co., et al., 96 So. West'n Rep., 1101; VanDyke v. Packett Co., 71 So. West'n Rep., 441; Newport News & M. V. R. Co. v. Camp., 25 So. West'n Rep., 268; Beach on Cont. Neg. sec. 360; Beach on Cont. Neg., 3rd Ed., sec. 348, page 501; A. & E. En. of Law, vol. 20, page 55;

Enc. of Pld. & Prac., vol. 13, page 913; Shearman & Redfield on Neg., vol. 1, sec. 188, page 292, and sec. 212; 4 Thompson on Neg., 2nd Ed., sec. 4654, page 680, and sec. 212; Williams v. The Railroad, 111 Ky., 282; K. & I. Bridge & R. R. Co. v. Snydor's Adm'r, 26 Ky. Law Rep., 955.

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Reversing.

To reverse a judgment rendered against it in behalf of appellee, this appeal is prosecuted.

The facts exhibited by the record may be thus stated: Appellee, at the time of the injury, was employed in the pantry of the Galt House. She was 31 years of age, and had previously worked in the kitchen. The kitchen is situated on the second floor, and the dining room and cafe on the first floor, adjacent to the pantry. The communication between the kitchen and pantry was by means of a dumb waiter moved by an electric motor. Through this the food was sent down from the kitchen, and the soiled dishes sent up from the pantry. On the kitchen floor a servant of appellant received the food, put it in the dumb waiter, and sent it down to the pantry, and likewise received the soiled dishes sent back, and delivered them to the kitchen. Appellee's duties were to take the dishes with food on them out of the dumb waiter when it came down to the pantry. The waiter was started either up or down by pulling a small cable rope, and it could be started from either the kitchen or pantry. The servant in either place, by pulling the rope, could send the waiter up or down at his pleasure. A speaking tube was supplied, by means of which the persons in the kitchen and pantry could communicate with each other; but they could also speak through the well of the dumb waiter. Appellee

worked in the pantry in connection with the waiter about two months. On the occasion of the accident, she was in the act of taking food out of the waiter, her arms being inserted into it for that purpose, when suddenly the waiter started upwards, catching and fastening appellee's arms between the shelf of the waiter and the shaft. The result was that appellee was lifted a short distance from the floor and remained suspended for a few minutes until the waiter was sent down, receiving serious injuries that may result in permanently destroying the use of one of her arms. Appellant asks a reversal of the case because the court erred in instructing the jury, and in failing to give a peremptory instruction asked for, and because the evidence is wholly insufficient to support the verdict.

The negligence complained of in the petition is thus stated: "She says that said injuries were caused by reason of the dangerous and defective condition of the said elevator, in that it was without suitable locks and brakes to render it impossible to be moved upwards while removing articles from the same; that said elevator was in said dangerous condition by and through the gross negligence and carelessness of the defendant, and that said defects were known to the defendant, or could, by the exercise of ordinary care, have been known to it, and was unknown to the plaintiff." It will be observed that the gist of the complaint is the failure to have the waiter equipped with suitable locks or brakes to prevent it from being moved upwards while articles were being taken from it. There is no complaint that the dumb waiter was defective in any other respect, so that the liability of appellant depends on the question whether or not it was its duty to have this waiter equipped with a device that would prevent it from being moved or started upwards without the consent and assistance

of the servant working in the pantry.    There is no evidence whatever in the record that this dumb waiter previous to the injury had ever been equipped with any device of this character, or any lock or brakes. Nor is there any competent testimony that similar waiters were usually or generally equipped with an appliance of this sort.    Upon this point, two witnesses testified for appellee.    Toney Hubbuch said that this was the first dumb waiter he ever worked with.    Asked if he had ever seen a dumb waiter like the one which was operated equipped with locks and brakes to keep them from going up, he answered: "No, sir, I never worked with a dumb waiter before.    That was the first dumb elevator I ever worked with in my life.    Q. Did you ever see a lock on a dumb waiter?    A. No, sir, I have seen this one."    Albert H. Hall was asked: "In your experience as you say since 1879, have you had much experience with these waiters?    A. Yes, sir, but not with electricity; in dumb waiters, yes; lots of hotels I have worked in that had them.    Q. I will ask you whether or not there is any provision in the way of safety appliances to lock them by brakes or clamps, so that when they are down they cannot be pulled up until they are released?    A. Those appliances were made after the lady was hurt.    Q. Are there such appliances on elevators?    A. Yes, sir.    Q. You say there are such appliances used on elevators?    A. Yes, sir.    Q. For what purpose?    A. For safety, to keep from having somebody at the other end pull it up. Q. Was there such an appliance on this elevator at the time she was injured?    A. No, sir.    Q. Were those appliances in general use at the time this occurred? A. No, sir, they weren't put there until after the lady was hurt.    Q. I don't mean on this particular elevator, but on elevators generally used?    A. I haven't seen or worked with any other electric elevator.    Q. I am

speaking of any dumb waiter? A. I suppose there
was. Q. Do you know? A. I don't know. Q. I am not
speaking about the power—never mind whether it was
steam, electricity, or what, but are the locks and
brakes you have spoken of generally used on other
dumb waiters? A. As far as I know, yes, sir.'' Sev-
eral witnesses testified—in fact, it is conceded—that
the waiter could have been equipped with a safety
lock or appliance that would prevent it from going up
without the consent or assistance of the person in the
pantry, and that, if it had been so equipped at the
time, it could not have started when appellee was
injured without her aid.

The law in relation to the duty of employers in re-
spect to machinery like the elevator in question is
very well settled in this State. In fact, this court
has followed the rule generally approved, and thus
stated by Shearman & Redfield in their work on Negli-
gence, section 195: ''The master is not bound to
provide the very best materials, implements, or ac-
commodations which can be procured, nor those which
are absolutely the most convenient or most safe. His
duty is sufficiently discharged by providing those
which are reasonably safe and fit. Still less is he
bound to furnish every new improvement or invention,
but he may wait where the question of safety is
involved until an alleged improvement has been tested
and has come into somewhat general use. Only such
appliances, safeguards and tests as are usual, can
be required.'' And in Thompson on Negligence (sec-
tion 3993), where the following rule is thus laid down:
''The master is not under an obligation under all the
circumstances to make use of the best and safest
known appliances and instruments, nor is he responsi-
ble for failure to discard one which is not of the safest
possible kind which can be secured, and to supply

anything in its place which may be safer, nor is he required to furnish under all circumstances, and without regard to their cost and his ability to pay for them, the newest and best kind of implements which may be in use in his line of business, nor is he required, as a matter of law, to provide machinery of any particular description; but he discharges his duty to his servant when he provides those which are in common and generally used in his business, which are considered safe by other employers generally, who are engaged in the same business, and which may be safely operated by the exercise of ordinary or reasonable care. He discharges his duty if the machine, tools, and appliances which he furnishes for the use of the servant are reasonably safe for the purpose intended." So, in McCormick Harvesting Machine Co. v. Liter, 66 S. W. 761, 23 Ky. Law Rep. 2154. this court said: "A master is not required to furnish machinery with the latest improvements. It is the duty of the master to provide reasonably safe machinery for the use of his employes, and to keep it in reasonably safe repair." To the same effect is Dow Wire Works Co. v. Morgan, 96 S. W. 530, 29 Ky. Law Rep. 854. Applying these principles of law to the facts as presented by this record, it is manifest that the motion for a peremptory instruction should have been sustained. The mere failure of appellant to provide the waiter with a lock or brake was not sufficient under the evidence to charge it with a breach of duty to appellee. The measure of its duty to her was fully discharged when it furnished a reasonably safe waiter for her use. If there was evidence tending to show that this waiter had ever been equipped with a device to prevent it from going up, or if it was shown that an appliance of this kind was in general use on waiters of this class, or if any other negligence was alleged

or proved, a different state of case would be presented. But, in the face of the uniform rule applicable to cases of this character, and so often approved by this court, one that is just to the master as well as to the servant, we do not feel at liberty to hold that, under the evidence, appellant, in failing to provide this waiter with a lock or brake, was guilty of negligence.

In all occupations where machinery is employed the servant must, in the very necessity of things, take and assume some risk. The master is not an insurer of the person of his employes against injury incurred in his service, nor is he required to warrant the safety or sufficiency of the machinery or premises. When the appliance or machine or premises furnished is reasonably safe, measured by the use to which it is put, his duty is fully performed. And, under the operation of this sound rule, it is said in Thompson on Negligence (section 3993) that: "It is not sufficient that there are later or safer appliances to be had, but that supplied must have some radical fault, or its use have become so generally obsolete or supplanted by others superior thereto that its adoption or retention will itself indicate negligence." There is evidence tending to show that the injuries appellee received resulted from the negligence of a fellow servant, but, in view of the conclusion we have reached, we do not deem it necessary to consider this question.

Wherefore, the judgment is reversed, with directions for a new trial.