## Harris v. Cincinnati, New Orleans & Texas Pacific Railway Company.

(Decided October 5, 1917.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1. Master and Servant—Fellow Servant Rule—Assumption of Risk —Negligence.—Under the Federal Employers' Liability Act the fellow servant rule is abolished, and contributory negligence has been made a question of comparative negligence; but the common law rule of assumed risk still obtains in Kentucky.

2. Master and Servant—Assumption of Risk.—The risks which an employee assumes are those connected with the conduct of the business, of which he knows, or which he could or should know by using ordinary care.

3. Master and Servant—Duty to Provide Reasonably Safe Implements.—A master is not compelled to provide the best means or implements that can be secured, or those that are absolutely safe and most convenient; his duty is discharged when he provides implements and means which are reasonably safe for those exercising ordinary care for their own safety.

4. Master and Servant—Liability of Master.—It is a general rule that the servant is the best judge of his own physical strength; and the duty is on him not to overtax it; if he misconceives the amount of strength required to accomplish the task given him, and overstrains himself, the master is not liable.

JOEL H. WARD and MYERS & HOWARD for appellant.

GALVIN & GALVIN for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellant, Julian Harris, brought this action to recover damages for injuries received by him at Greendale Station on January 26, 1915, while in the service of the appellee as a brakeman upon a freight train. At the time he was injured, Harris was a member of a train crew consisting of a conductor, three brakemen (Pointer, Hartman, and Harris), an engineer, and a fireman, who were operating a local freight train from Danville, Ky., to Cincinnati, Ohio.

When the train reached Lexington, Ky., it picked up several cars containing freight for way-stations between Lexington and Cincinnati; and one of these cars contained freight for points between Lexington and Ludlow, Ky. The car was sealed and, with other freight, it contained a barrel of paint and four boxes of paint. shown by the way-bill to have an aggregate weight of 1,080 pounds, to be delivered at Greendale Station, the first station north of Lexington.

The company has three tracks in front of its station at Greendale; one next to the station called the "house track"; a second or middle one known as the "passing track"; while the third one was the "main line" track. The use of each of these three tracks is indicated by its name.

At Greendale Station the railroad company had provided skids for use in unloading freight that was too

heavy to be carried by hand. These skids, however, only reached from the second or passing track to the station platform; they were not·long enough to reach from·the main line track to the platform. It was the duty of the brakemen to unload the freight; and, usually, when a train delivered freight at Greendale that was too heavy to be carried by hand, it would run in on the passing track so that the skids might be used in handling the freight. When the train reached Greendale on the day in question it stopped on the main line; the seal of the car was broken; and brakeman Pointer entered the car, rolled the barrel of paint to the door, with the head of the barrel extending over the edge of the door, where Harris and Hartman were waiting to receive it. When Harris and Hartman took the barrel from the car it fell to the platform, crushing Harris' right hand to such an extent that his index finger and little finger had to be amputated. The barrel of paint weighed 700 pounds.

The conductor was not present at the time of the accident, and no employe of the company gave any directions to Harris except such as were contained in his general orders to unload freight, and such as might be implied from the invitation of Hartman in rolling the barrel of paint to the door of the car. Harris brought this·action under the Federal Employers' Liability Act, of April 22, 1908, alleging negligence upon the part of the company: (1) in not placing the car containing this heavy freight upon the passing track, or upon the house track adjacent to the depot platform; (2) in requiring Harris to support the barrel to the ground without advising him as to the nature, or contents thereof; and (3) in not providing sufficient men to safely handle the barrel. At the conclusion of the plaintiff's testimony the trial court sustained the defendant's motion for a peremptory instruction to the jury to find for the defendant, and Harris appeals.

Relying upon the claim that the car which carried the paint contained only *intra* state freight, although it formed a part of an interstate train, the defendant contended that the case did not come within the Federal Employers' Liability Act. The trial court, however, determined that question against it and gave the peremptory instruction upon the ground that Harris assumed the risk that resulted in his injury; that it was a matter of· lifting a dead· weight and that any person employed to· handle freight of that character is bound to use his·

own judgment as to his ability in that respect; and that if he makes a mistake in judgment, and is injured, it is a risk assumed.

The appellant, however, insists that the rule of assumed risk as applied by the court has no application in this case, because the plaintiff had no opportunity to form a judgment as to his ability to lift the barrel of paint, or even to see it, until it was thrust to him through the open door of the car; that under the circumstances of this case he cannot be held to have assumed the risk of injury; but, if it should be determined to the contrary, this is nevertheless clearly a case about which the minds of men might differ, and is consequently to be determined by the jury.

Under the Federal Employers' Liability Act, which the trial court applied to this case, the fellow servant rule is abolished, and contributory negligence has been made a question of comparative negligence; but the common law rule of assumed risk still obtains in Kentucky. Under that rule, the risks which an employe assumes are those connected with the conduct of the business, of which he knows, or which he could or should know, by using ordinary care. In determining, therefore, that the case was one within the provisions of the Federal Employers' Liability Act, and ignoring the fellow servant rule and the common law rule of contributory negligence, the trial court treated the case in the way most favorable to the appellant. Harris contends, however, that his conduct, if culpable, makes a case of contributory negligence and not a case of assumed risk, and for that reason, it presents, under the Federal Employers' Liability Act, a question of comparative negligence, for the jury.

The line that the law draws between assumed risk and contributory negligence may be said to be somewhat vague and poorly defined.

The Supreme Court of the United States considered the question at length in Seaboard Air Line Co. v. Horton, 233 U. S. 492, and attempted to make the distinction plain, in the following excerpt taken from the opinion:

"Contributory negligence involves the creation of some fault or breach of duty on the part of the employee; and since it is ordinarily his duty to take some precautions for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily

prudent employees under similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of an employee. The risks may be present notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into account in fixing the rate of wages, and a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place for work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect or risk alike are so obvious that an ordinarily prudent person, under the circumstances, would have observed and appreciated them.''

We fail to find any evidence as to the handling of the barrel in this case that imputes negligence to the company, since neither the conductor nor any other servant of the company failed in his duty in that respect. Neither was there any negligence on the part of the company in placing the car on the main track instead of in placing it upon one of the other tracks where the skids could have been used more advantageously. The master is not compelled to provide the best means or implements that can be secured, or those that are absolutely safe and most convenient. His duty is discharged when he provides implements and means which are reasonably safe for those exercising ordinary intelligence for their own safety. New Galt House Co. v. Chapman, 124 Ky. 527; Flaig v. Andrews Steel Co., 141 Ky. 391; Truesdell v. C. & O. Ry. Co., 159 Ky. 718.

Harris' complaint is, that the conductor was negligent in not placing the car on the passing track so that he could have used the skids which were long enough to reach from the passing track to the platform. But the failure of the company to so place the car did not absolve Harris from his obligation to judge of his own strength in handling the barrel. In Truesdell v. C. & O. Ry., *supra,* the court said:

"Whether, therefore, the rail rebounded because it came in contact with the tie or rail brace is immaterial. The result is the same in either case. Plaintiff knew of the presence of the ties, and also of the presence of the rail brace. Persons handling heavy objects like a railroad rail must necessarily take notice of the simple law of nature that the rail may slip or rebound or turn over when it comes in contact with the ground or ties or any other object upon which it is caused to fall. The doctrine of assumed risk has not been entirely abrogated by the Employers' Liability Act. It is only where the injury grows out of a violation of some federal statute enacted for the safety of employes that the doctrine of assumed risk no longer applies."

The trial court, was, therefore, right in treating the case as one of assumed risk. Under that doctrine one of the rules is that a servant is not entitled to recover damages from his master for injuries received in connection with straining or overtaxing himself in lifting heavy objects in his master's service, since the servant is the best judge of his own lifting capacity; and the risk, if any, rests upon him and not upon his master. Thompson on Neg., vol. 4, sec. 4834; Ferguson v. Phoenix Cotton Mills, 106 Tenn. 236; St. Louis and San Francisco Ry. Company v. Snowden (Okla.), 149 Pac. Rep. 1083.

The rule was stated by this court in Sandy Valley & Elkhorn Ry. Co. v. Tackitt, 167 Ky. 756, as follows:

"It is simply a case where the servant, with knowledge of the fact that he was not equal to the task, overstrained himself. It is the general rule that a servant is the best judge of his own physical strength, and the duty is on him not to overtax it. Therefore, if he misconceives the amount of strength required to accomplish the task and overstrains himself, the master is not liable."

Again, in the later case of L. & N. R. R. Co. v. Sawyers, 169 Ky. 671, where a servant was overheated from being overworked, this court in directing a peremptory instruction to find for the defendant, said:

"The only safe and practical rule is that each man is the best judge of his own physical strength and powers of endurance; that he knows better than any other can, when the limit has been reached and when, in following his own instinct of self-preservation, he must desist and exercise his right under the law to give up his work if it is more than he can stand."

To the same effect see Wilson v. Chess & Wymond Co., 117 Ky. 567; L. & N. R. R. Co. v. Boone, 138 Ky. 700; H. G. Nunnelley v. Prather, 157 Ky. 157; L. & N. R. R. Co. v. Williams, 165 Ky. 393.

Harris' work was simple, and the risk and danger, if any, were obvious when the barrel was rolled to the car door and presented to him for handling. As the only thing to be done was to lower it to the ground, a person of the most ordinary intelligence would know that the law of gravitation would cause the barrel to drop from the car door to the ground, unless it was held with sufficient strength to prevent it. From his experience of many years as a brakeman and fireman on a railroad train, and as a man of ordinary experience, Harris knew this. He, better than anyone, knew the limit of his own strength in handling heavy freight. If he doubted his strength or ability to handle the barrel, the burden of making a decision was clearly his, and not the conductor's. Hartman, who was helping him handle the barrel, was able to do it safely and did not overestimate his strength.

Under the facts and the law applicable thereto as above pointed out, we are of the opinion the circuit court properly directed a verdict for the defendant.

Judgment affirmed.