JOHN ROOK, Administrator, Appellee, v. DAVENPORT, ROCK ISLAND & NORTHWESTERN RAILWAY COMPANY, Appellant.

MASTER AND SERVANT: Master's Liability—Extent in General
1 —Dual Injury—Evidence. Evidence is admissible to show that a servant's injury resulted from one of two injuries or from a combination of two injuries.

MASTER AND SERVANT: Tools, Etc.—Unnecessary and Voluntary Use of Tools. A servant may not recover for an injury
2 caused by the voluntary use of a tool by the servant without the express or implied direction of the master.

MASTER AND SERVANT: Tools, Etc.—Simplicity of Task—Non-
3 Necessity to Furnish Tools. A task may be so simple in its execution as to exclude any duty on the part of the master to furnish any tool. So held as to the task of unloading ties.

MASTER AND SERVANT: Warning and Instructing Servant—
4, 6 Simplicity of Task. A task may necessarily be so simple as to

absolve the master·from all duty to warn and instruct the servant. So held as to the task of piling railway ties, weighing 140 pounds, upon a pile 2½ feet high.

**NEGLIGENCE:** Acts Constituting Negligence—Lifting Car From Railway Track. It is not negligence for a master to require seven able-bodied men to lift a·section men's car from the track at a point where the track is .on practically level ground, when, as a matter of practice, four men were commonly and without ·difficulty performing the same task.

**MASTER AND SERVANT:** Warning and Instructing Servant—Simplicity of Task.

**MASTER AND SERVANT:** Assumption of Risk—Servant Overtaxing Himself. A servant assumes the risk of overtaxing his physical powers. So held where one strained himself in lifting.

*Appeal from Scott District Court.*—M. F. DONEGAN, Judge.

DECEMBER 18, 1917.

SUIT for personal injuries sustained by plaintiff's decedent while in the employ of defendant. Verdict for plaintiff, and defendant appeals.—*Reversed and remanded.*

*Lane & Waterman,* for appellant.

*Ely & Bush* and *Cook & Balluff,* for appellee.

1. MASTER AND SERVANT: master's liability: extent in general: dual injury: evidence.

SALINGER, J.—I. The petition alleges decedent was injured on one day, went to work on the next, and was again injured. There is no evidence that, when decedent began work on the second day, anything indicated that he was in any way disabled. by his first injury, and that, therefore, the employer had any duty to refuse letting him work. On this, appellant insists that no evidence addressed to the first injury should have been received. This contention is manifestly based upon a misconception of what negligence is charged. While the citing by appellee of *Kerr v. Keokuk Waterworks Co.,* 95 Iowa 509, indicates a claim on part of plaintiff that defendant was negligent in causing a sick man to go to work, the peti-

tion charges no such negligence.  An analysis of the peti-
tion presently to be made, as well as the argument of ap-
pellee, demonstrates plaintiff's claim to be this: The negli-
gence of defendant caused an injury.  On the next day, it
caused a second.  Defendant should pay for the loss caused
by both acts of negligence; and it may not escape liability
for either negligence because it needed both to cause the
damage.  The evidence complained of was an attempt to
prove one of two alleged negligences, and therefore rightly
received.

II.  The negligence charged as to the
first injury is that, on direction of defend-
ant, decedent used a track jack handle and
a wrench with a pipe extension to handle
"certain heavy oak switch ties and piling
same;" that defendant was negligent in furnishing said
tools for said work and in not furnishing decedent "with
proper grapples or other tools;" that, because of such negli-
gence, a heavy oak tie handled in an attempt to place it
upon the pile slipped from the track jack handle upon the
wrench with pipe extension, "and in such a way as to
bounce or jump," whereby one end of the tie struck the
track wrench with pipe extension held by decedent, causing
one end of said wrench to strike him in the abdomen, pro-
ducing injuries the exact nature of which plaintiff is un-
able to state.

2. MASTER AND
SERVANT:
tools, etc.: un-
necessary and
voluntary use
of tools.

The first question is: Is there enough evidence to send
to the jury whether there was a direction to use said tools
for said work, and if so, whether it was negligence to do
this, instead of furnishing different tools for that purpose?

As this petition is framed, there is nothing for a jury
as to injury caused by handling the ties with improper
tools, if there is no evidence that the master directed deced-
ent to use the tools he did use.  The evidence is that
decedent and the crew of which he was a member did use

said appliances. But as to direction to use same, all there is this: (1) The section foreman said, "The same four that were piling ties [in the morning] can finish piling them after dinner." (2) It appears affirmatively that the foreman did not himself engage in this work. (3) The road master says, not that the tools were furnished, but on the contrary, and no more than that "the usual appliances given to section men for carrying is hand spikes; sometimes they take track wrench handles,—anything handy." We must conclude it should not have been submitted to the jury whether the alleged improper tools were used on direction. The record works a demonstration that their use was the voluntary act of the members of the crew. If anything not yet pointed out is needed to support this view, it is found in the statement of one witness for plaintiff that other tools were available, but that they used the ones they did because "these were handy and we liked to work with them."

## 2-a.

Should it have been left to the jury **3. MASTER AND SERVANT: tools, etc.: simplicity of task: non-necessity to furnish tools.** whether there was a failure to furnish proper tools? That must depend largely upon the nature of the work to be done. The ties in question had been loaded upon a "jerry car," and were unloaded from it upon a pile. When the tie the unloading of which injured decedent was being lifted from the car, the pile upon which it was being attempted to place it was about 2½ feet high, and its top a little lower than the bottom of the tie. It is conclusively shown that none of the ties were more than 8 or 9 inches square and 12 feet long; that some had dry rot, and were, therefore, lighter than the normal tie of said dimensions; that some were heavy and some were light; that the ones in normal condition did not weigh more than between 140 and

150 pounds; and that any two of the four engaged in unloading could have unloaded any of the ties. While it does not appear just how big and heavy was the particular tie the unloading of which is said to have injured the decedent, the only direct testimony on that point is:

"The one we were carrying when Rook was hurt was not a heavy tie: two of us could have picked that one up, one at each end, and handled it if we had wanted to."

The only addition is furnished by certain opinion testimony received against objections, which testimony fairly amounts to this: Answering a question as to what was the usual, customary, and proper tool for a section gang "for taking hold of and carrying" ties, it was answered: "On a section gang where they usually have but a few men, it depends on what they are doing;" and that, in unloading ties from a car, "they usually have a grapple hook." Further, if the tie is so big as to need four men to carry it, it is handled with two such hooks, and if thus handled, there is still a chance of hurting the men unless "you shove the tie on the pile perfectly straight;" that "the most practical way would be grappling hooks," to which is added that the "ordinary tie" could be laid on the pile by two men without such hook. Being then asked whether it was not true that, if four men handled a tie 14 feet long, they wouldn't need much of anything to pick it up, it was answered: "Yes, but there is a safe way to do it;" that it would be safer for four men to place a tie on the pile without tools "than with the bars." Another witness said that, while the tools that were used might be handy to get hold of, "at the same time it would not be as proper and safe as some other way;" that he would say that a good tool like a pair of ice tongs would be a proper tool; that he had seen such a tool used in that work a number of times; that in his time it was generally customary for section gangs to be furnished with such an appliance, but he does not know wheth-

er that custom has since been abolished. On cross-examination, witness said that the claimed custom did not obtain as to ties a little over eight feet long, nor to ties that two men "could carry very easily," and he supposes four men "could carry a 14-foot tie as easy." The final outcome of an attempt to say that, in the case of a 14-foot tie, it would be safer, or at least better, to use the hook, is an admission that four men can with perfect ease pile a tie weighing 140 pounds, without using a hook or any other tool.

We are of opinion that it does not make a jury question of negligence to show that grappling hooks were not furnished to four men for taking a tie which did not weigh more than 140 pounds, and which, on the plaintiff's testimony, weighed considerably less, from a jerry car, and putting it upon a pile 2½ feet high, the top of which was a trifle lower than the bottom of the tie. It was, therefore, error to allow a recovery which did or might include damages sustained while unloading the ties. It is not a question of degree of proof. There was no proof of negligence. There is no charge of negligence in failure

4. MASTER AND SERVANT: warning and instructing servant: simplicity of task.

to warn or instruct. And what we have said settles that the case is not one in which there was a duty to warn or instruct. See *Haskell v. L. H. Kurtz Co.*, 181 Iowa 30. For distinctions which the slightest examination will make plain, neither *Fitter v. Iowa Telephone Co.*, 143 Iowa 689, *Luisi v. Chicago G. W. R. Co.*, 155 Iowa 458, *Johnson v. Ashland Water Co.*, (Wis.) 37 N. W. 823, at 824, nor *Supple v. Agnew*, (Ill.) 61 N. E. 392, counter our holding.

5. NEGLIGENCE: acts constituting negligence: lifting car from railway track.

III. The remaining charge of negligence is this: Decedent was ordered and required to assist in removing a heavy gas engine car from the track and to carry same bodily sideways down a rough, uneven grade about three feet high, faced with loose gravel and

stone.  The negligence complained of is:  (1)  Defendant negligently required decedent and his fellow employes to thus carry the car;  (2)  that this method of removing the car from the track was improper and unsafe, and the foreman knew that, in the circumstances, it was improper and unsafe;  (3)  that the foreman negligently required decedent to assist in the removal in an unsafe and improper manner and with insufficient help, "considering the weight of the car and the manner in which defendant was requiring it to be handled."

Is there enough evidence to send this allegation to the jury?  There were four handles on each end of the car. Sometimes nine men would lift it off—that was when the full crew was present.  But as few as four men did it right along.  At the time under consideration, decedent and three men were on the end nearest the engine, and three were on the other end.  Of the seven who lifted the car off, decedent was 20 years old, and weighed 155 pounds;  the three on the end at which he was were, respectively, 22 years old, and weighed 165 pounds, 16 years old, 5 feet 9 inches tall, and weighing 140 pounds, 18 years old, and weight 150 pounds.  While it is not so definite, it can fairly be gathered from the record as a whole that the three at the other end were of about the same physical standing.  At any rate, plaintiff has no evidence that they were weak.  After the seven got hold of the car, they backed it up and set it off, lifted it "right east beside the track," carried it off the east side of the track, and set it about 3½ or 4 feet from the track, "just on the edge of the grass line."  At the point where the car was taken off, the roadbed is cinders and gravel.  A witness for plaintiff says:

"There was not much of a grade from the track down to where we set the car;  it was on a culvert, which was very near level there;  there was some grade, but not much."

Then follows an estimate that it could not have been over a foot and a half, "something like that—two feet." The one witness for defendant is its roadmaster. He says the culvert was an arch culvert, it has a parapet wall out at the end, and there is a fill to the top of that wall, and that at this point "the roadbed is practically level, as level as you will find a roadbed anywhere."

The one witness—one for plaintiff—who speaks to the weight of the car says he does not know how long it was, nor its exact width, nor the size of its wheels: it could carry 12 or 14 men; it had a one-cylinder engine of $2\frac{1}{4}$ to $2\frac{1}{2}$ horse power; it weighed about 900 pounds. According to this witness, decedent made no complaint after the car was taken off. He was not seen to slip "or twist himself in any particular way" while moving the car, and moved just like the others that were helping carry the car. After the car was set off, decedent worked up to the noon hour, but shortly before that, he acted as though something was the matter with him, and he didn't eat any dinner. He then said he thought he hurt his side. Another witness for plaintiff says decedent was not seen to stumble, give way, or bend, and did not indicate that the weight he was carrying was too great for him. But he says decedent said, about 15 minutes after the car was carried off, that his side hurt him, and said nothing about it later, and that he worked a little after lunch time, but worked "like as if he was sick."

There is opinion testimony which amounts to saying that there is a usual and customary way of removing heavy hand cars from the track. Assume that method was not used here. But there is not an atom of evidence that any-one in authority demanded or suggested the method that was used, or that it was not the voluntary choice of the crew. All there is on the point is that the foreman told the crew to take the car off. A medical witness, answering a

hypothetical question, said, over objection, that certain symptoms could be due to lifting a hand car. The statement is in almost that few words, quite casual, and the force of the opinion is addressed to whether decedent might have been struck in the abdomen while unloading the tie.

6. MASTER AND SERVANT: warning and instructing servant: simplicity of task.

Any examination of the claim and the proof demonstrates that there was nothing to justify a jury in finding that the first was in any degree sustained by the last. Nor is the case helped by the argument that there was negligence in not instructing a minor, without experience in section work, as to the proper manner of removing a ponderous gasoline car from the track, and the dangers of an improper method. No such negligence is pleaded. And we have said elsewhere, and it is as true on this point, that here there was no such duty.

"The law does not require from anyone superhuman wisdom or foresight." It suffices that, if a reasonable and prudent man had been asked as to whether there was a given danger, he would have considered the question an absurd one. *Sikes v. Sheldon,* 58 Iowa 744. On this test, it was not negligence not to anticipate danger of injury from having seven able-bodied men lift a 900-pound car from the track, in the conditions attendant here upon such removal.

7. MASTER AND SERVANT: assumption of risk: servant overtaxing himself.

It should be added that the pleader himself makes fairly plain that the complaint of the second incident rests on defendant's having thrown a severe and heavy strain upon decedent, and that this caused rupture and other internal injuries, the exact extent of which plaintiff is unable to state. Now while, for reasons presently to be stated, we will leave open the question of proximate cause, we have to say that, if the cause of death be from strain, there can be no recovery.

Thompson on Negligence, Vol. 4, Section 4834, states the law as follows:

"In general, a servant is not entitled to recover damages from his master for injuries received in consequence of straining and overtaxing himself in lifting heavy objects in his master's service, since the servant is the judge of his own lifting capacity, and the risk of not overtaxing it rests upon him."

In *Haviland v. Kansas City, P. & G. R. Co.*, (Mo.) 72 S. W. 515, the plaintiff, a railroad employe, strained his back in loading steel rails onto flat cars, and it is said it nowhere appears from his testimony that the force employed was inadequate, or that he was expected or required to lift more than an ordinary man could lift or shove, or more than he had previously lifted or shoved with safety, or that anything occurred to cause the injury. It was held that he could not recover. And the testimony of an alleged expert, to the effect that, while an ordinary man could lift 200 pounds, 16 section hands were necessary to lift a rail weighing 600 pounds, was stricken out by the court as manifestly absurd.

In *Ferguson v. Phoenix Cotton Mills,* (Tenn.) 61 S. W. 53, the plaintiff, a laborer, was employed to wheel wet cotton on a four-wheel truck. He sustained a rupture in trying to lift the truck out of a drainage hole. He had the help of one other man, had been working only five days, and had never lifted such boxes of cotton. It was held, first, that the hole was obvious, and the servant assumed the risk. Further, the court proceeds:

"If the wheel of the truck had gone into the hole, and it was the duty of the employe to lift it out, then he cannot hold the master liable for overexerting and straining himself. He is the best judge of his own lifting capacity, and the risk is upon him not to overtax it."

IV. If an injury due to the negligence of the employer,

coupled with an earlier injury, caused death, he would be liable though the first injury was not due to his fault. But to make this applicable, the second injury must be due to his fault. It follows that, as we find under the record as it now is, that there was no negligence either time, we should not pass upon whether there is any evidence of causal con-nection. When it is found there is no negligence, there should be no inquiry into whether an effect is traceable to a nonexistent thing. The judgment is reversed.—*Reversed and remanded.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.