# Williams v. Kentucky River Power Company.

(Decided March 1, 1918.)

## Appeal from Perry Circuit Court.

1. Master and Servant—Assumption of Risk.—The doctrine of assumed risk is a rule of the common law which is based on contract and, by implication, on the servant's act in voluntarily exposing himself to danger.

2. Master and Servant—Appliances—Defects.—Where there is no defect in the place, appliances or material in or with which the servant works, and he sustains injury by overtaxing his strength, and whatever danger there is in the manner of his performing the work is obvious and, therefore, known to him, the master will not be liable.

3. Master and Servant—Assumption of Risk.—It is a general rule that a servant is the best judge of his own physical strength and in the absence of coercion or some requirement of the master compelling him to overtax that strength, any injury resulting to him therefrom must be regarded as incidental to the risk assumed by him in undertaking the work.

H. C. EVERSOLE for appellant.

MORGAN & NUCKOLS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—
Affirming.

In this action brought in the Perry circuit court the appellant, Toney Williams, sought to recover of the appellee, Kentucky River Power Company, damages for injuries sustained to his person, caused, as alleged in the petition, by the gross negligence of appellee's foreman; such negligence consisting, as further alleged, of the misconduct of the latter in requiring him to remove from a car and carry a distance of 65 or 75 feet green lumber too heavy for a single person to handle and the weight of which produced his injuries, known as double "inguinal hernia."

The answer of the appellee denied the negligence charged in the petition and alleged contributory negligence and assumption of risk on the part of appellant. The latter pleas were controverted of record, and upon the issues thus formed the case went to trial, resulting in a verdict for the appellee, returned by the jury in obedience to a peremptory instruction given by the

court at the conclusion of the appellant's evidence. Appellant complains of the action of the court below in giving the peremptory instruction and refusing him a new trial; hence, this appeal from the judgment entered in conformity to the verdict.

It appears from the appellant's evidence that he and two other employees of the appellee were directed by its foreman, Yonkers, to remove from a car standing on a side track of the Louisville & Nashville Railroad, at Glomarr, the lumber in question, which consisted of boards or plank of green pine running in length from eight to sixteen feet, having a width of from eight to twelve inches and a thickness of from one to two inches. In removing the lumber from the car one of the employees stood in the car and passed it through the door, when it was taken in hand by appellant and the other employee, each carrying a plank at a time a distance of 65 or 75 feet and laying it in a pile.

The other two employees of the appellee assisting in the removal of the lumber were not introduced in appellant's behalf, and he alone testified as to the manner in which the lumber was unloaded and what occurred during the performance of that work. It appears from his testimony, however, that Yonkers, the foreman, was present when the unloading of the car began and much of the time until the work of unloading was completed. So we must look to appellant's testimony alone to ascertain what negligence, if any, the foreman was guilty of. The following excerpts from his testimony furnish the only evidence relied on to establish the negligence complained of:

"Q. How much lumber did you unload? A. A box car load of lumber; there was three of us, one inside threw it off and two, we moved it and placed it side by side. Q. Who was your boss? A. Mr. Yonkers, Sam Yongers. Q. Was he present? A. Yes, he was showing us what to do and telling us what to do. He told us where to place it and he went himself first. I told him it was a little too heavy. He says, 'Well, I will take it up,' and he took one. Q. What did you say to him? A. I said it was a little too heavy. Both of us we told him that, I and Bradley, and he says, 'I will pick it up,' and he took one and then we walked along and took one each, each time, just the way they come, heavy or whatever it was, —Light."

Appellant further testified that during the progress of the work of unloading and shortly after he began he felt the pains in the groin which were later discovered by him to have been caused by the hernia. He did not, however, complain of these pains to the foreman or his fellow employees and completed the work of unloading the lumber without any further complaint of the weight of the plank. Other witnesses introduced in appellant's behalf and who claim to have seen and worked the lumber after it was unloaded testified as to its green condition and some of them as to its weight, but none of these witnesses ventured the opinion that the weight of any of the plank was such as to render it too great for a single man to carry it, a single plank at a time, as was done by appellant, or to make it unsafe to anyone so carrying it. Two physicians who examined appellant a month after he was injured testified as to the character of the injuries, one of whom expressed the opinion that the hernia had existed for perhaps as much as a year, and the other that it was of recent occurrence. Upon their advice he obtained a truss which has since been worn by him. The physicians further testified that while appellant is capable of doing ordinary or light work, he cannot perform such labor as would require lifting or active muscular exertion. It also appears from the testimony of appellant that he continued in the service of appellee from January 1st, 1916, the date of his receiving the alleged injuries, down to July of that year, during practically the whole of which time he performed such ordinary labor as did not require lifting or violent physical effort.

We quite agree with the conclusion reached by the trial court. Appellant's evidence fails to show any culpable negligence on the part of appellee's foreman, Yonkers, but does show such a state of case as authorizes the application of the doctrine of assumed risk. In other words, it is patent from the evidence that the injuries sustained by appellant resulted from no fault or negligence on the part of the foreman, but from a cause or causes purely incidental to the risk he assumed in undertaking and continuing the work of unloading the car. The assumption of risk is a rule of the common law which is based on contract and, by implication, on the servant's act in voluntarily exposing himself to danger. In this case, according to the evidence, there was no de-

fect in the place, appliances or material in or with which appellant worked; and if there was any danger in the manner in which he was required to perform the work, such danger was obvious and, therefore, known to him. Wilson v. Chess & Wymond Co., 117 Ky. 567; L. & N. R. Co. v. McMillen, 142 Ky. 257; Dow Wire Works v. Moorman, 29 R. 854; Cumberland Tel. & Tel. Co. v. Graves' Admrx., 31 R. 972; Mize v. L. & N. R. Co., 127 Ky. 496; Fuller v. I. C. R. Co., 138 Ky. 42. It is not alleged in the petition or shown by the evidence that appellant and the two other employes of the appellee were unequal to the task of unloading the lumber, nor was there any assurance from the foreman of safety to appellant in undertaking or continuing the work. He was not even commanded by the foreman to continue it after he made complaint of the weight of the plank. All that the foreman did was to remove one or more of the heavier planks himself to show that the carrying of a plank at a time was but a single man's work; and there was nothing whatever in the evidence to show that the foreman was mistaken in this conclusion. Certainly whatever statement was made or act done by the foreman amounted to nothing more than the mere expression of his opinion; but if it were conceded that what he said or did amounted to a command to the appellant to proceed with the work as directed, it would not have authorized the appellant, if he found himself unequal to the task of removing a single plank at a time, to continue in the work until he was injured by overtaxing his strength to such an extent as to cause the injuries sustained by him. It is the general rule that a servant is the best judge of his own physical strength and in the absence of coercion compelling him to overtax that strength, it is his duty not to overtax it.

In Sandy Valley & Elkhorn Ry. Co. v. Tackett, 167 Ky. 756, in which the plaintiff claimed to have been injured while operating a lifting jack, and that his injuries were due to the negligence of the defendant in ordering him to operate the jack alone and in failing to furnish a sufficient force to operate it, we held that in view of the rule that a servant is the best judge of his own strength and that the duty is on him not to overtax it, the fact that he was injured by overtaxing it in attempting to operate the jack by means of a lever, imposed no liability upon the defendant for such injuries, as he as-

sumed the risk incidental to his use of the jack, even though he was ordered by the defendant's foreman to operate it alone.

In Louisville & Nashville Railroad Company v. Williams, By, &c., 165 Ky. 386, the plaintiff while performing night work with a fellow servant for the master in loading cinders from a cinder pit on cars, was overcome by the heat of the weather and thereby injured; and the evidence showing that the place of work, appliances for performing it, and the manner of its performance, were reasonably safe, and that the work was such as had always been done by two men, the defendant was held not liable in damages for the injuries sustained by the plaintiff. In the opinion we, in part, said:

"If the unusually hot weather prevailing the night appellee was injured added a risk or danger he had not previously encountered in the performance of his work, the danger was admittedly known to him, as he experienced the heat before he was overcome by it, . . . . The master is under no duty to prevent his servant from becoming overheated at his work, resulting from atmospheric or weather conditions, as they are matters beyond his control. In such case, while the servant may not certainly know how to keep himself within the limits of safety, he is better able to judge than anyone else how much heat he can safely stand, how it affects him, and when his endurance reaches a point beyond which he ought not, for his own safety, to continue the work. For these reasons it is for him and not the master to determine whether he shall engage in the work at all; or, if so, how energetically, and when he should rest or quit. If this were not true an employer could never afford to employ a laborer to do work at which there was any probability of his becoming overheated; and it is not to be overlooked that in operating furnaces, engines, and other heat producing machines or appliances there is always more or less danger to the operative of becoming overheated, and the same is likewise true of farming and other occupations which compel the laborer to be exposed to the heat of the sun."

So in the case before us it may properly be said that no one was better able than appellant to judge, in unloading the lumber, to what extent he could exert his strength without injury to himself, or when his power

of endurance had reached a point beyond which he ought not to exert that strength. Manifestly, appellee's foreman did not know and could not have told that the work of unloading the car in which appellant assisted by removing. a single plank at a time, was too great for his strength, and what he said and did was merely to demonstrate that, in his opinion, the work being performed by appellant was no greater than might be done by a single man.

As in our opinion the appellant's injuries were not caused by the negligence of appellee's foreman, but resulted solely from an ordinary risk of danger incidental to the service in which he was employed, and which he assumed in accepting such employment, it follows that the giving of the peremptory instruction by the trial court, as asked by the appellee, was not error.

Wherefore, the judgment is affirmed.