FRANK KEMPE, Appellant, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellee.

No. 40477.

OCTOBER 21, 1930.

REHEARING DENIED JANUARY 16, 1931.

*Claud M. Smith*, for appellant.

*Molyneux, Maher & Meloy, Helsell, McCall & Dolliver*, and *E. C. Craig*, for appellee.

GRIMM, J.—On November 8, 1929, the plaintiff filed his petition in the Cherokee County, Iowa, district court, whereby he sought to recover from his employers, the Illinois Central Railroad Company, the sum of $10,000 for personal injury damages alleged to have been sustained on the 27th day of July, 1929, while the plaintiff was working with other employees of the defendant company at a railroad siding near the city of Cherokee, Iowa, loading railroad rails on a flat car. It is claimed that the plaintiff at that time received an injury to his back and spine and vertebrae, and some injuries to the muscles surrounding the same.

Briefly stated, the facts are that, on the day in question, and for years prior thereto, the plaintiff had been a section foreman in the service of the defendant company. He had worked for the company in section work for about eight or nine years. On the day in question, he was directed by a superior officer to report with his men at Carney's siding, near the city of Cherokee, Iowa. A similar order had been given to several other section foremen. A pile of railroad rails was lying near the company's railroad track at this siding. The company desired to have them loaded on a flat car. They were what is known in the language of railroading as "sawed rails," which means that, at some time prior to the date of the incident in question, damaged ends of these rails had been sawed off. They were, therefore, slightly shorter and lighter than the ordinary rails. They were what is known as 75-pound rails: that is to say, they weighed 75 pounds to the yard in length.

In order to facilitate the loading of the rails, there was produced by the company what is known as a "dolly." This

was a concave roller device, upon which the rails were pushed up over the end of the railroad car. What is known as "rail tongs" are used in handling rails. These tongs resemble ordinary ice tongs, except that the handles are long, and extend at approximately right angles to the shaft, at the lower end of which shaft there are clamps which fit over either the ball of the rail, if the rail is being carried top up, or over the bottom flanges of the rail, if the rail is being carried upside down. These tongs are so constructed that they cannot be used by one man in lifting. One man can, by taking hold of each handle or arm of the tongs, engage the tongs on the rail, but in lifting, there must be force applied to each arm of the tongs, or they will slip off.

In the process of loading the rails, as the upper end comes onto the car, two men apply the tongs at the upper end, and proceed to lift and pull the rail up the dolly. The plaintiff and one Jenkins were on the flat car, using a pair of tongs between them, which they applied farther back on the rail. In the first tier of rails, the bottom of the rail was laid flat on the top of the flat car; the second tier of rails was placed upside down, so that the ball of the rail extended down between the balls of the rails of the first tier. The third tier was placed as the first one, and the fourth tier as the second. The work was begun about 10 o'clock in the morning, an hour was taken for lunch, and it is claimed by the plaintiff that the accident occurred at 2 o'clock in the afternoon. At this time, it is claimed, they were loading the fourth tier of rails. 75 or 80 rails had been placed on the car. According to plaintiff's undisputed testimony in the case, these rails, as they were being pulled up over the end of the flat car, wedged, more or less, in between the ends of the rails already loaded, so that it was necessary, as the work was being done, to pull them loose. The plaintiff claims that, while he was thus engaged, he received the injury of which he complains.

Originally, the charge of negligence against the defendant was, briefly stated, a failure on the part of the defendant company to furnish a power hoist or derrick to do the work. On the day of the trial, an amendment was filed, which stated plaintiff's cause of action in the following terms:

"By the said Sam Jenkins' then and there failing and

neglecting to do his share and proportion of the lifting of the said rail in question, then and there at said time and place in the process of being loaded, and by then and there causing the said Jenkins' proportionate share of the weight of the said rail to be unexpectedly shifted upon this plaintiff, and by then and there, thereby overtaxing the strength of this said plaintiff, and thereby causing the injury to plaintiff's back herein complained of, and the injury and damage resulting therefrom.''·

It is claimed that the injury occurred about 2 o'clock in the afternoon, and that the crew, including the plaintiff, continued in the usual way in the loading of the rails until the work was completed, about 3 o'clock on the same afternoon. Approximately 45 rails were loaded after the alleged injury, during which loading the plaintiff continued to work as he had previously done. He remained in the service of the company from July 27, 1929, the date of the accident, until August 23, 1929, when he left, to secure treatment in the defendant's hospital in Chicago. He left Cherokee for the hospital on August 23d, but did not enter the hospital until August 30th, having spent, as he claims, one week with his brother in Chicago, previous to entering the hospital.

At the close of plaintiff's evidence, the defendant filed a motion for a directed verdict on seven grounds, which motion was sustained. The appellant presents six grounds for reversal.

I. The appellant contends that the court erred in holding that the plaintiff herein, under all the facts and circumstances as shown by the record, assumed the risk of said injury by not quitting his job and employment with the defendant company ''when confronted with the way and manner of loading the rails in question in this case.'' In other words, the appellant contends that the court erred in holding that the plaintiff assumed the risks incident to loading the rails by hand when he discovered that the power hoist was not to be used. The plaintiff knew, before the beginning of the work, that a power hoist would not be used. Moreover, the evidence, without conflict, shows that, while power hoists had occasionally been used in loading large quantities of rails, yet, nevertheless, the usual and customary manner of loading rails such as were being loaded at this time, was the manner used by the company on this occasion. The plaintiff had frequently participated in the load-

ing of rails by hand, as was done at this time, and only on one or two occasions had the hoist been used in the work of loading rails when the plaintiff was present.

While, as the plaintiff contends, a power hoist would have been a proper device for loading these rails, nevertheless, by the plaintiff's own evidence, it clearly appears that for many years it had been customary, wherever the plaintiff had worked, to load rails by hand by the process in use on this occasion. There is no evidence whatever that the method in use was an improper method, or that the failure on the part of the company to use a hoist was negligence.

Under all the facts as disclosed in this case, there was no negligence shown on the part of the company by reason of having the work done by hand, rather than by a power hoist. The  plaintiff was thoroughly familiar with this method of hand-loading, and knew and fully appreciated all the dangers, if any, incident to the work, and he assumed whatever risk there was in thus doing the work.

II. The appellant next contends that the court erred in holding that the plaintiff assumed the risk of the injury of which he now complains. It will be noted that the plaintiff  had been in the service of the defendant company for approximately nine years, during more or less of all of which time he was familiar with the method of loading rails employed on the day in question. He was thoroughly familiar with rail tongs and the manner of using them long before the beginning of the work on the day in question. Moreover, he had continued in doing exactly the same work, in exactly the same way, for three hours before the incident of which he complains. Seventy-five or more rails had been loaded, and in each case he and his companion, Jenkins, had done exactly what they were doing at the time the plaintiff claims he was injured. According to his own uncontradicted testimony, the greater number of the rails which had been loaded prior to the accident had stuck in the same manner that the one stuck of which he complains, and he and Jenkins had released the stuck rail by pulling and lifting, as they did in this particular case. All of this is definitely proven by the

plaintiff's own testimony. To set the same out would unduly extend this opinion.

The plaintiff claims that he was injured because his working companion, Jenkins, on the other side of the rail tongs, did not lift enough. The language of the amendment to the petition is:

"By the said Sam Jenkins' then and there failing and neglecting to do his share and proportion of the lifting of the said rail in question * * * causing the said Jenkins' proportionate share of the weight of the said rail to be unexpectedly shifted upon this plaintiff, and by then and there, thereby overtaxing the strength of this said plaintiff, and thereby causing the injury * * *."

It will be noted that it is not claimed that the rail was dropped, or that Jenkins dropped his end of the tongs. The tongs were not forced against the plaintiff, nor did anything fall on the plaintiff. We have here the mere assertion that, as the plaintiff and his fellow employee were using the rail tongs together, the co-employee, Jenkins, failed to do his share of the lifting: that is to say, the plaintiff claims that Jenkins did not lift as much as the plaintiff thinks Jenkins should have lifted. By the plaintiff's own testimony it clearly appears that this particular rail was handled in exactly the same way as all other rails, previously loaded, had been handled. The plaintiff says that Jenkins had exercised more pulling at one time than at another, more or less, during the three hours they had worked, prior to the time of the alleged accident. All of this was done on Jenkins's part without any notice or warning: that is to say, it was not claimed by the plaintiff that Jenkins, at any time prior to the accident, warned the plaintiff that he (Jenkins) was about to lift less than he had previously been lifting.

The plaintiff knew, long prior to the accident, that Jenkins was likely to lift more or less on each rail. He appreciated this situation fully at and before the time of the accident. As a practical matter, this must necessarily be so, as there was no standard or gauge by which Jenkins could work. Moreover, the plaintiff testified that the tongs did not slip off the rail at the time of the injury, and nothing was dropped. Furthermore, the plaintiff testified that, while one man could place the tongs

in position, one man could not lift on the tongs,—they would slip off. There is no contention here that Jenkins quit lifting altogether; no contention that he dropped anything. There is no contention that he did anything without a warning upon which the plaintiff had a right to rely. There is here the simple charge that Jenkins, at that particular moment, was, in the opinion of the plaintiff, exerting less lifting power than he should have exerted. The failure of an employee to exert, at all times, exactly the same force in lifting, is not negligence. In the first place, it is absolutely impossible to accurately weigh or determine, from time to time, the exact amount of force being used in lifting. Moreover, it is manifestly quite difficult, if not impossible, for any human being to exert exactly the same lifting power at one time as at another. Machinery can be so set, but not human muscles. All of these things were known to the plaintiff, and must necessarily have been appreciated by him at and before the time of the incident in question.

It being assumed, but for the moment not decided, that the co-employee was negligent, nevertheless the law holds the plaintiff to have assumed the usual and ordinary risks incident to his work, including the negligence of a fellow servant, provided the plaintiff knows of and appreciates the risks resulting from such negligence.

By the plaintiff's own testimony, it clearly appears that the greater number of the rails which had been previously handled on that day had stuck, as did the one in question, and that, from time to time, during the three hours in question, plaintiff and Jenkins had worked together on the same pair of tongs. Jenkins had, at various times, lifted more and lifted less, as the work went on, and the plaintiff knew this. He definitely knew and fully appreciated that Jenkins, at any time, might lift a little more or lift less, and he knew that, if Jenkins lifted less, some more weight might come to him to carry. He admits that this particular rail was handled in the usual, customary, and habitual manner in which the work was being done.

Upon the whole record, on this question, we think that, even if it be assumed that there was negligence on the part of Jenkins, it was a kind of negligence with which the plaintiff

 had been familiar for years; negligence which he had experienced in working with rail tongs long prior to the incident in controversy; and negligence which had been going on, according to the plaintiff's own story, for three hours before the accident of which plaintiff complains; and negligence which the plaintiff fully appreciated, and the risk of which he assumed in the employment. The plaintiff frankly stated in his testimony that the same thing had happened frequently before, and he had anticipated its occurrence; and, as a matter of law, he either assumed the risk or waived the negligence, according as one chooses to call it an assumption of risk or waiver of negligence.

In the last analysis, plaintiff's complaint is that he overexerted himself. If more weight came upon plaintiff's side of the tongs, he need not have attempted to carry it. Nothing struck him. If he carried more than he should, it was by his own volition. By attempting to carry more than his share, as he thought, he voluntarily overtaxed his strength, or overexerted himself.

This court, in *Rook v. Davenport, R. I. & N. W. R. Co.*, 182 Iowa 227, has quoted with approval the following from 4 Thompson's Commentaries on the Law of Negligence, Section 4834:

" 'In general, a servant is not entitled to recover damages from his master for injuries received in consequence of straining and overtaxing himself in lifting heavy objects in his master's service, since the servant is the judge of his own lifting capacity, and the risk of not overtaxing it rests upon him.' "

See, also, *Haviland v. Kansas City, P. & G. R. Co.*, 172 Mo. 106 (72 S. W. 515) ; *Ferguson v. Phoenix Cotton Mills*, 106 Tenn. 236 (61 S. W. 53).

This court also, in *Rook v. Davenport, R. I. & N. W. R. Co.*, 182 Iowa 227, quoted with approval from *Ferguson v. Phoenix Cotton Mills*, 106 Tenn. 236 (61 S. W. 53), a case in which a laborer was employed in wheeling wet cotton on a four-wheel truck. He sustained a rupture in trying to lift the truck out of a drainage hole. The court held that the hole was obvious, and that the servant assumed the risk, and said:

" 'If the wheel of the truck had gone into the hole, and it was the duty of the employee to lift it out, then he cannot hold the master liable for overexerting and straining himself. He is the best judge of his own lifting capacity, and the risk is upon him not to overtax it.' "

In *Ehrenberger v. Chicago, R. I. & P. R. Co.*, 182 Iowa 1339, a foreman directed an employee to carry certain wooden logs a distance of a block and a half to the company round-house. Ordinarily, a push cart was furnished for that purpose, but on this particular night, the employee was unable to use it, because the passageway was obstructed by cars. The employee responded to the order that the wood was too heavy, and that he needed a helper. Nevertheless, the foreman directed him to get the wood, if he cared to keep his job. As he was about finishing the task, he found two large pieces yet to be carried over. He reported this to the foreman, who ordered him to carry it over. He sustained a rupture, due to overexertion in attempting to carry the heavy piece of wood. This court said, among other things:

"The general rule, therefore, is that an employee who injures himself by overlifting or overstraining or overexerting himself in handling weights or other heavy bodies, though it be in the line of his employment, cannot hold the master liable for injuries which result from such overstraining; and this because he is a much better judge of his own strength,—in fact, is the sole judge of his own strength. This, though the work is attempted under the direction of the master. The risk of injuries of this character is assumed by the servant."

See, also, *Kerlin v. Chicago & N. W. R. Co.*, 149 Iowa 440. The plaintiff was a locomotive fireman. He had worked for several hours prior to his injury, in continuous service, without rest or sleep. He was directed to make another trip. He informed the company of his exhausted condition, but nevertheless he was directed to take his engine and a train, and he consented. The court said, among other things:

"Indeed, as we have already said, the natural inference is that he was better advised of his ability or want of ability to stand the strain than the foreman could possibly have been,

and if, with this knowledge or superior means of knowledge, he chose to accept the service, he must be held to have assumed the risk.''

The foregoing proposition has support in many other jurisdictions, a few only of which need be considered.

In *Rodeff v. Lake Shore & M. S. Ry.*, 39 Ohio Cir. Ct. 105, it appears that the plaintiff, with other men, was required to carry, with rail tongs, a heavy steel rail. It was to be carried across a decline. The charge of negligence was that the railway company improperly instructed the carrying of this rail across the decline, in such a way that the burden of the rail would be shifted unequally on the workmen, by reason of the inequalities of the ground, and that, when the workman alongside of the plaintiff stepped down from the track before the plaintiff did, he shifted a great part of the burden on the plaintiff, causing the injury. The court said:

''The principle which forbids a recovery is that the servant is the best judge of his own lifting capacity. The principle is equally applicable whether the burden is to be lifted and carried on level ground or ground which is uneven. The notes to the case just cited [*Stenvog v. Minnesota Transfer R. Co.*, 108 Minn. 199 (121 N. W. 903, 25 L. R. A. [N. S.] 362)] state that the lifting of heavy objects involves no perils that are not obvious to any person of common understanding.''

See, also, *Harmon v. Seaboard A. L. Ry.*, 110 S. C. 153 (96 S. E. 253).

In *Lively v. Chicago, R. I. & P. R. Co.*, 115 Kan. 784 (225 Pac. 103), a track hand of experience sustained a hernia while at work replacing a broken rail. The court said, among other things:

''So this plaintiff, knowing, as he did, how heavy the rail was, and how many men were needed to handle it, and also knowing better than his employer—better than anybody else—how strong he was, how hard he could tax his muscles with safety to himself, continued in the employment, and assumed the risk * * * of hurting himself, with the usual consequences, strain, rupture, hernia, which flow from overtaxing one's strength.''

The court sustained a judgment for the defendant, on a demurrer to the petition.

In *Matson v. Hines*, 63 Mont. 214 (207 Pac. 474), plaintiff sustained a strain of his side, back, and abdomen while lifting a rail. The court said, among other things:

"In cases of the character of this one, which may be classed as 'strain cases,' the injury occurring by overtaxing one's strength, the rule is that the lifting of a heavy object involves no peril that is not obvious to any person of common understanding. The employee is the best judge of his own lifting capacity, and the risk is upon him if he overtaxes it. An employee who undertakes to lift, or *assist in lifting*, a heavy object, knowing its weight and condition, assumes the risk of the injury due to the task being too great for his strength, and, in case injury results, he is not entitled to recover damages from his employer." (Writer's italics.)

See, also, *Capan v. Delaware, L. & W. R. Co.*, 91 N. J. Law 164 (102 Atl. 661).

In *Kampeen v. Chicago & N. W. R. Co.*, 152 Minn. 445 (189 N. W. 123), plaintiff had been for many years an employee of the defendant company as a machinist and electrician. He was accustomed to lifting and moving heavy weights, either alone or with the help of others. He was ordered by his foreman to aid certain employees to load an iron casting, weighing about 600 pounds. He claimed to have received an injury, and the court reversed a judgment for plaintiff, saying:

"* * * every man of ordinary intelligence is conclusively presumed to be the best judge of his lifting capacity and strength, and his master is not liable in damages for an injury resulting from an overexertion in lifting a heavy article in the course of his employment. * * * There was nothing complicated about the work of loading the casting in question upon the truck; its size and probable weight were plainly before the workmen, there was no emergency requiring hasty action, and no reason was presented to justify an overexertion by any of them."

See, also, *Harris v. Cincinnati, N. O. & T. P. R. Co.*, 176 Ky. 846 (197 S. W. 464); *Hines v. Cox*, 192 Ky. 94 (232 S. W. 373).

In *Boyet v. Davis*, 217 Mo. App. 513 (269 S. W. 413), the

plaintiff, with others, was ordered to lift from the rails a motor car weighing 1,500 pounds, with 300 pounds of material on it. A rupture to the plaintiff resulted. The court, in reversing the judgment for the plaintiff, said:

"Plaintiff concedes that he knew, when he entered upon this employment, of every danger of which he complains. He knew that there were not enough men in the crew to handle this motor car as it was required to be handled in carrying on the work required to be done. *He knew that Secrest was a shirker,* and when he started to lift the motor car from the rails when he was injured, he knew that Fudge was incapacitated. According to plaintiff's evidence, every act of negligence of which he complains was fully known to him and was fully appreciated by him. * * * Measured by the law of assumption or risk under the Federal Employers' Liability Act, reasonable men could not differ as to the knowledge by plaintiff of the acts of negligence of which he complains, and his full appreciation of them. We are constrained to hold that plaintiff, as a matter or law, assumed the risks of which he complains. Having reached this conclusion, it is not necessary to dispose of other assignments." (Writer's italics.)

It is true that plaintiff in this case does not denominate his co-employee a "shirker," but he states that he knew that Jenkins frequently lifted less than he did at other times, and charges him with not having lifted his share. These cases are very closely parallel.

In *Louisville & N. R. Co. v. Reese,* 177 Ky. 711 (198 S. W. 14), the plaintiff Reese was a member of a force of men carrying a heavy railroad frog, weighing 1,000 or 1,200 pounds. The complaint was made that the plaintiff was required to carry this over uneven ground, which necessarily, from time to time, changed the weight carried by each man. A judgment for the plaintiff was reversed by the court, and it said:

"* * * The proof convinces us that the accident to plaintiff was one of the ordinary hazards incident to the character of his work, and we are unable to avoid the conclusion that the trial court erred in refusing the peremptory instruction asked for by the defendant."

In *Tosh v. Illinois Cent. R. Co.,* 204 Ky. 363 (264 S. W. 754),

the plaintiff Tosh was a section hand of years of experience. He alleged injury to the muscles of his back and hips in assisting to load a T-rail on a hand car, as directed by his foreman. A judgment was entered for the defendant below on a directed verdict, and this was affirmed on appeal, on the ground that Tosh knew as much about the situation as anyone, and, being the best judge of his own strength, he assumed the risk. The court further says:

"In the first place, it is obviously not true that it was too late for plaintiff to protest or retire from the undertaking after discovering the length of the rail, without injury to the rest of the crew; for he must have known, as soon as he attempted to lift it, that it was much heavier and longer than the others he had helped load. Besides, the rule applies not only when the servant knows of the danger, but also when 'it is plainly obvious to a person of ordinary prudence in his situation,' as was held in *Hines v. Cox*, supra [192 Ky. 94], and as is the case here."

See, also, *Louisiana R. & N. Co. of Texas v. Disheroon* (Tex. Civ. App.), 295 S. W. 250; *Blackaby v. Louisville & N. R. Co.*, 213 Ky. 368 (280 S. W. 1093); *Molovasilis v. Chicago, M. & St. P. R. Co.*, 179 Wis. 653 (191 N. W. 582); *Williams v. Kentucky River Power Co.*, 179 Ky. 577 (200 S. W. 946); *Saunders v. Boston & M. Railroad*, 82 N. H. 476 (136 Atl. 264).

Has the plaintiff shown the co-employee Jenkins to have been negligent at the time of the accident? It is not claimed that Jenkins dropped his tongs. It is not claimed that he *quit* lifting.

The claim is that Jenkins "neglected to do his share and proportion of the lifting." That is merely the plaintiff's conclusion: first, as to how much Jenkins's share of the lifting was, and second, how much Jenkins was lifting at the time of the accident. There is no standard by which the lifting which Jenkins should have done can be measured. No one can say that lifting a certain number of pounds was a proper performance of his duty under the circumstances, and lifting any definite number of pounds less would have been negligence. No human being is so constructed that he will at all times lift with exactly the same force. Under the undisputed facts in this case, the plaintiff has not shown Jenkins guilty of negligence.

Each of the cases cited by the appellant has been carefully examined. In the main, they are cases in which plaintiff was injured because of some unexpected negligent act by a co-employee. Every case cited by the appellant in support of this proposition is not in point here, because, upon an undisputed record, there was here no unexpected negligent act of a co-employee. In the first place, whatever the co-employee did at the instant of the accident, plaintiff admits the same co-employee had done many times before in the three hours of operation previous to the time of the accident, and plaintiff at least had every reason to expect he would do the same thing again, to wit: lift less at times than he did at other times. Moreover, this failure of the co-employee to lift all he could, or to exercise any definite standard of lifting continuously during the operation, was not an act of negligence on the part of the co-employee.

Of the cases cited by the appellant, the following deal with unexpected negligent acts of the co-employee: *Graber v. Duluth, S. S. & A. R. Co.*, 159 Wis. 414 (150 N. W. 489); *Reed v. Director General of Railroads*, 258 U. S. 92 (66 L. Ed. 480). Others of appellant's cited cases deal with situations where the co-employee was guilty of a definite specific act of negligence, which could not have been foreseen or anticipated, and which directly resulted in an injury to the plaintiff.

In *Cahill v. Illinois Cent. R. Co.*, 148 Iowa 241, the plaintiff and others were moving a push car from the railroad track. One of the co-employees suddenly and unexpectedly let go his hold, as a result of which a part of the push car struck the plaintiff and injured him.

In *Reed v. Dickinson*, 184 Iowa 1363, the fellow servant, without warning or signal which he was expected to give, suddenly jerked his end of the rail loose, causing a bar in plaintiff's hands to strike the plaintiff and cause him injury.

In *Currtwright v. Chicago, M. & St. P. R. Co.*, 197 Iowa 1216, the co-employee, without any warning, dropped the instrument which he was using, and, as a result, plaintiff was struck in the side by the implement which he was using.

Several other cases cited by the appellant support the doctrine that, as was said in *Girl v. United States R. Adm.*, 194 Iowa 1382, an employee does not assume the risk incident to the negligence of the employer until he becomes aware of such negligence

and of the risk arising therefrom, unless the negligence and risk are so apparent and obvious that an ordinarily careful person would observe the one and appreciate the other. See, also, *Davis v. Crane*, 12 Fed. (2d Ser.) 355; *Kenyon v. Illinois Cent. R. Co.*, 187 Iowa 277.

Plaintiff cites *Kanawha & M. R. Co. v. Kerse*, 239 U. S. 576. In that case, plaintiff, a switchman, was injured by a wooden structure built across a switch track by an industry which the switch track served. This obstruction had been in existence for a considerable period of time. There was a sharp conflict in the evidence whether the injured party knew of the obstruction. The defendant requested an instruction to the effect that, if the plaintiff knew of the obstruction, and with such knowledge continued in the service, he must be held to have assumed the risk of injury. The Supreme Court said:

"Since knowledge of a fixed obstruction over the track in such a position as not to clear a man standing upon the top of a box car would seem necessarily to import to an experienced brakeman that there was a risk of injury to him in that situation, and since there was no evidence of objection by Barry [plaintiff] or promise of reparation by his employer to rebut the presumption that the risk was assumed, the refusal of this request appears plainly erroneous."

It will be found, upon a close examination of appellant's cases, that none of them are in point on the undisputed facts in the case at bar.

The lower court correctly sustained defendant's motion for a directed verdict for the defendant, and the cause must be, and is,—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.