## ROBERTS v. INDIANAPOLIS STREET RAILWAY COMPANY.

[No. 19,597.   Filed May 27, 1902.]

NEGLIGENCE.—*Street Railroads.*—*Injury of Conductor.*—A conductor of a street railroad company cannot recover for injuries sustained in exerting or straining himself in turning a car on a turntable on the ground that the turntable was out of repair and defendant had promised to repair the same, since plaintiff was under no obligations so to exert himself in his effort to turn the table, and was thereby guilty of negligence. *pp. 634-637.*

SAME. — *Complaint.* — *Contributory Negligence.* — A complaint which shows actionable negligence on the part of defendant, in an action for personal injuries, and also, under the facts pleaded, establishes a defense, is bad on demurrer. *pp. 637, 638.*

From Marion Superior Court; *J. L. McMaster,* Judge.

Action by Edward C. Roberts against the Indianapolis Street Railway Company for personal injuries. From a judgment for defendant on demurrer to complaint, plaintiff appeals. Transferred to Supreme Court, under §1337u Burns 1901. *Affirmed.*

*D. J. Hefron* and *C. Harrington,* for appellant.
*F. Winter* and *C. Winter,* for appellee.

JORDAN, J.—Action by appellant against appellee to recover for personal injuries. Demurrer to the complaint sustained. Judgment on demurrer, from which this appeal is prosecuted. The following are the facts alleged in the complaint: Appellee is a street railway corporation engaged in running and operating electric cars in and over the streets of the city of Indianapolis. On and prior to December 21, 1900, appellant was in the employ of said

company, engaged as a conductor on one of its lines, known as the "Alabama and Garfield Park line." At the end of this line there was located a turntable, used by the company for the purpose of turning cars for their return trip. It was the duty of the conductors and motormen in charge of each car on the aforesaid line to run the car onto this turntable and turn the car around, by means of the conductor and motorman taking positions opposite each other, and by pushing and pressing against the cars with their backs and shoulders, turn the table around. When the table was in proper repair and good condition, it could, by this method, with little exertion, be easily turned. After giving a description in respect to the construction of the table, the complaint then further avers that on January 21, 1900, the table became out of repair, in this: "That the rails of the track beneath the table became loose and out of place, so that the wheels of the table, in turning around, would slip off the rails; that the timber and frame work of said table became worn and loose, so that the platform of the table was caused to tip and sag, and caused the outer edge thereof, and the ends of the rails of the track on said table, to rub and scrape against the wooden rim of the pit, and bind and hinder the turning of the table; that, on the afternoon of said day, the table became out of repair, as aforesaid; plaintiff, being off duty, was sent for by the defendant, and he and another employe of defendant were ordered and directed to assist the car men in turning their cars on the said table. Plaintiff and said assistant remained in attendance at said turntable until the cars quit running that night. While this plaintiff was so attending and assisting in the turning of cars on said table, the defendant's road officer came and examined the condition of the turntable, and ordered and directed its repair without delay. Plaintiff avers that the defendant ordered and directed the repairs of said turntable and promised to have the same repaired without delay. On January 22, 1900, the plaintiff was ordered by the de-

fendant to go upon duty, and take charge of his car, and resume his run upon said line. Plaintiff, relying upon the promise of the defendant that the said turntable would be at once repaired, went upon duty as conductor in charge of one of the defendant's cars upon said line. Upon the first three trips made upon his run, the turntable was still unrepaired, and there were no helpers to turn the car, but it so happened that there were passengers on the car who voluntarily assisted in turning the same. On his fourth trip there were neither helpers nor passengers on the car, and the turntable was still unrepaired; but the emergency of the defendant's business was such that it required that his car should be kept going, and still. relying upon the promise of the defendant to repair said turntable, and believing that it would be repaired in a short time, plaintiff and the motorman in charge of said car ran it upon the said turntable and turned it around. That, in turning said turntable and car, plaintiff placed his back against the car, and caught hold of the projection of the car over the step, while the motorman did likewise by his side. That by reason of said turntable being out of repair, as aforesaid, considerable force and exertion was required to push the same around, and, in pushing and exerting himself to turn said table, because of the extra force required on account of the defective condition of said table, which he exercised to a reasonable degree, plaintiff was strained and severely injured internally, in this, to wit, that the lumbar muscles of the lower part of his spinal column were strained." Here follows a specific account of the injuries which he received by the over exertion in turning the car. It is then averred "that the said injuries so sustained by the plaintiff were the result of the negligence and carelessness of the defendant in suffering said turntable to become defective and out of repair as aforesaid, and in negligently suffering it to remain out of repair an unreasonable length of time,

and in negligently failing to furnish help to turn said table when it became necessary to turn it around." Damages in the sum of $5,000 are demanded.

Conceding that appellee under the alleged facts was guilty of negligence in failing to keep the turntable in proper repair, nevertheless the complaint, under its averments, clearly establishes that appellant in exerting or straining himself in turning the table was also guilty of negligence which contributed as a proximate cause to the injuries which he sustained; hence the case is ruled by the maxim of *damnum absque injuria,* and he cannot recover in this action. Appellant was under no obligations to appellee to over exert or strain himself in his effort to turn the table, and certainly, under the circumstances, appellee company could not anticipate or foresee that by reason of its failure to repair the table that there was any necessity to protect appellant against his own voluntary action in subjecting himself to the over exertion or strain which resulted in the injury of which he complains. He is shown to have known of the condition of the table, and, from his previous experience in the operation thereof, he certainly was aware of the extra effort or force that was required to operate the table. He is presumed to have known his own strength, and, in fact, he himself was the only one who under the circumstances could measure the extent to which he could safely exert himself in his effort to turn the table. As nothing appears to the contrary, we may assume that he was competent to act and judge for himself. The company neither exacted nor had the right to exact of him any over exertion of his strength in turning the table, hence he assumed whatever risk there was due to such over exertion or strain to which he voluntarily subjected himself. If the complaint can be said to show actionable negligence on the part of appellee, it also, under the facts, establishes a defense in its favor, and therefore, under a

well settled rule of pleading, is bad on demurrer. *Behrley* v. *Behrley*, 93 Ind. 255; *Gold* v. *Pittsburgh, etc., R. Co.*, 153 Ind. 232, 247.

Judgment affirmed.