## Sandy Valley & Elkhorn Railway Company v. Tackitt.

(Decided January 14, 1916.)

### Appeal from Pike Circuit Court.

Master and Servant—Injury to Servant—Overtaxing Strength—Assumption of Risk.—The rule being that a servant is the best judge of his own strength and the duty is on him not to overtax it, a servant who is injured by overtaxing his strength in attempting to operate a jack by means of a lever, assumes the risk and cannot recover of the master, even though he is ordered by the master's foreman to operate the jack alone.

AUXIER, HARMAN & FRANCIS and HAGER & STEWART for appellant.

STATON & PINSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Claiming to have been ruptured while operating a lifting jack, and that his injuries were due to the negligence of defendant in ordering him to operate the jack alone and in failing to furnish a sufficient force to operate the jack, plaintiff, Willie Tackitt, brought this action against defendant, Sandy Valley & Elkhorn Railway Company, to recover damages. A trial before a jury resulted in a verdict and judgment in favor of plaintiff for $2,780.00. Defendant appeals.

The evidence for plaintiff tends to show the following facts: Plaintiff was a laborer in defendant's employ. He had been at work for about three months and was engaged in dressing track, tamping ties and operating the jack. In the work of operating the jack he had had only about three weeks' experience. At the time of his alleged injury the company was using two jacks. Tom Harman was in charge of the rear jack, while plaintiff, with the assistance of William George Tackitt, was operating the jack in front. There were seven or eight men in the crew and John Keaton was the foreman. Addressing plaintiff and William George Tackitt, Keaton said: "By G—, it looks like if Tom Harman could pull this jack, looks like one of you fellows ought to pull that." He also remarked that it was a one man's job and that he had pulled a jack for three months by himself. Thereupon William George Tackitt dropped back and left

plaintiff on the jack. After working ten or fifteen minutes plaintiff 'felt 'something' tear about his groin. He then went down the road and came back and mentioned it to Keen Harman. After that he worked a little over three days, when it began hurting him so badly he quit. Later on he went to Keaton's house and told him that he was ruptured. He further says that when the accident occurred he was working on the inside of the curve, and that the ballast was very heavy where they were at work. Later on he consulted a physician, and since that time he has not been able to do heavy work. Sam Ray, plaintiff's brother-in-law, testified that plaintiff called for help and William George Tackitt started to help him. Thereupon John Keaton stated that if Tom Harman could pull his jack it looked like one of them could pull the other jack. Thereupon William George Tackitt went back to tamping ties. He saw the place where plaintiff was injured. Plaintiff afterwards went to Keaton and Keaton told him that if he was hurt he had better lay off a few days. In describing the accident this witness said:

"He (plaintiff) went to pull on it and tried to move it and couldn't, and he got down on the end of the bar to try to get it to go, and when he did that I saw him get off the lever and go down the road. He stayed down there a while and then came back."

Several witnesses testified that when the ballast was heavy three or four men were required to operate the jack, but when the ballast was light two or three men could operate it.

For the defendant John Keaton testified that plaintiff worked for four days and four hours after he claimed that he was hurt. After plaintiff quit work he never heard of any complaint that he was ruptured. Plaintiff, however, told him on November 23rd that he believed he was going to be ruptured. He denied using the language attributed to him by plaintiff and his witnesses. He heard plaintiff and Tom Harman discussing their abilities to run the jacks. One bet the other $5.00 that he could run it. Witness told the person making the bet that he would lose the money, as he himself had run a jack many a time. William George Tackitt testified that on the occasion in question John Keaton said something about the operation of the jack being a one man's job. While Keaton did not direct him to quit, yet what Keaton said was the cause of his quitting. There was further

evidence to the effect that on several occasions plaintiff and other workmen engaged in a test of their strength by lifting rails, hand cars, etc.

Defendant insists that a peremptory instruction should have gone in its favor. On the other hand, plaintiff contends that the facts bring it within the rule laid down in I. C. R. R. Co. v. Langan, 116 Ky., 318, and L. & N. R. Co. v. Mahan, 113 S. W., 887. In the first mentioned case plaintiff and three others were engaged in moving steel shafts, weighing from 200 to 460 pounds each, from the company's cars to the freight platform. They were working under the direction of a freight clerk. After moving several of the smaller shafts they requested the freight clerk to obtain assistance for the removal of the larger shafts, which weighed 460 pounds each. They stated that it would be dangerous for them to attempt to move the larger shafts, which were round, and had been oiled or greased, and which were about twenty feet long and from four to six inches in diameter. After failing to get additional men, the freight clerk told plaintiff and the others to go on. In handling one of the larger shafts it slipped or was dropped from the hands of the men, and fell on plaintiff's foot, severely injuring him. There was evidence to the effect that the force was inadequate. It was held that as the master insisted, after objection, that plaintiff proceed with the work, plaintiff did not assume the risk incident to the master's employing an inadequate force to assist in the work, where the probability of injury was such that the judgment of prudent men might differ as to the certainty of its happening, or with reference to whether the force was reasonably adequate to perform the work. In the last mentioned case plaintiff was ordered by the foreman to shoulder a hydraulic jack which was on the car and carry it a short distance therefrom. The jack weighed from 150 to 200 pounds. It had handles on each side, and the usual way of carrying it was for two men to take hold of the handles. When told to shoulder the jack, plaintiff demurred on the ground that he thought it was too heavy. The foreman insisted that as he and other men had carried it plaintiff could carry it. Thereupon the foreman placed the jack on plaintiff's shoulder. Plaintiff could not stand the weight and undertook to throw the jack to the ground. Failing to do

this, he was crushed to the earth by the jack and seriously injured. It was held that the defendant was liable.

Clearly the facts in the case at bar present an entirely different question from that involved in either of the above cases. In the Langan case plaintiff, together with others, was handling steel shafts and was injured because the force was inadequate. The peril was not obvious, since he could not know of the danger until actually subjected to the strain. In the Mahan case plaintiff not only acted in obedience to the order of his superior, but had no opportunity to know of the real danger until the jack was placed on his shoulder, and it was then too late to escape injury. In the case at bar, however, plaintiff was not placed in a position where he was required to sustain an unexpected weight. The jack was stationary and was operated by means of a lever which plaintiff could release at any time without danger. It is simply a case where the servant, with knowledge of the fact that he was not equal to the task, overstrained himself. It is the general rule that a servant is the best judge of his own physical strength, and the duty is on him not to overtax it. Therefore, if he misconceives the amount of strength required to accomplish the task and overstrains himself, the master is not liable. It may be doubted if the remarks of the foreman in this case amounted to anything more than the mere expression of an opinion; but, even if it be conceded that they amount to an expressed command to plaintiff to operate the jack alone, that fact does not alter the rule. Such remarks did not authorize plaintiff, when he found that he was not equal to the task, to persist in the attempt until he was injured by overtaxing his own strength, of which he was the best judge. Worlds v. Georgia R. Co., 99 Ga., 283, 25 S. E., 646; Leitner v. Grieb, 104 Mo. App., 173, 77 S. W., 764; Ferguson v. Phoenix Cotton Mills, 106 Tenn., 236, 61 S. W., 53; Roberts v. Indianapolis Street R. Co., 158 Ind., 634, 64 N. E., 217; Stenvog v. Minn. Transfer R. Co., 108 Minn., 199, 121 N. W., 903, 25 L. R. A. (N. S.), 362; L. & N. R. R. Co. v. Williams, 165 Ky., 386. It, therefore, follows that the trial court erred in refusing the peremptory asked for by defendant.

Judgment reversed and cause remanded for a new trial consistent with this opinion.