JOSEF EHRENBERGER, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**MASTER AND SERVANT:** Assumption of Risk—Overexertion. A servant (no statute to the contrary) assumes the risk incident to overexertion in the doing, even under protest by the servant, of work directed by the master.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

MARCH 12, 1918.

ACTION to recover damages for personal injuries. Opinion states the facts. Judgment for the plaintiff. Defendant appeals.—*Reversed.*

*Grimm & Trewin, F. W. Sargent,* and *J. G. Gambel,* for appellant.

*O. N. Elliott* and *Rickel & Dennis,* for appellee.

GAYNOR, J.—This action is brought to recover damages for personal injury. The plaintiff, a man forty-two years of age, was employed as a day laborer at the defendant's roundhouse in Cedar Rapids. Among his various duties was that of handling wood for use in the roundhouse.

He was injured January 20, 1912, about 10 o'clock at night. Just prior to his injury, he was ordered by the foreman to carry some wood to the roundhouse from the yards, a distance of about one and one-half blocks. A push car was furnished for that purpose; but on this particular night, he was unable to use it, because the passageway was obstructed by cars standing on the tracks between the place where the wood was. situated and the roundhouse. There was snow.on the ground, and it was cold. Just prior to his injury, he was ordered by the foreman of the round-house to carry this wood. Plaintiff informed the foreman that the wood was too heavy, and he needed a helper; but the foreman directed him to get the wood, "if he cared to keep his job." The wood consisted of ties, heavy, old, and a little decayed, or rotten. Upon receiving this order, he did carry considerable quantities of wood to the round-house, and split it up for use in firing the engines. He seems to have had no trouble in doing this until the wood was nearly all transported. There seem to have been two large pieces left. Upon discovering these large pieces, and that they were heavy, he informed the foreman that he need-ed a helper. He told the foreman that there was a heavy piece of wood, too heavy for him to carry alone, and that he needed a helper. The foreman did not inquire as to the size or weight of the wood,—in fact, inquired nothing about the wood,—but instructed plaintiff to go and carry it, as he needed fire to start the engine. Plaintiff returned to the wood pile. He testifies:

"When I got this piece of timber (this heavy piece), I stood it on one end, bent my shoulder toward it, and put it on my shoulder. It weighed 220 or 230 pounds. After I got it on my shoulder, I carried it over the same way I had taken the other pieces of wood. I had no trouble in carrying the heavy piece of timber until I got to the place where I was injured. I carried it on the right shoulder,

with the point forward. I got to the opening, and I was afraid the timber was going to fall off my shoulder; so I bent over. Then I felt a pain, but I continued with the wood upon my shoulder. I rested the piece for a while on the coupling of one of the cars. When I got the piece of wood to the roundhouse, I split it up. Later, I became ill, and went home and called a physician."

When the plaintiff returned, after carrying some of the wood, he notified the foreman that there were no more small pieces; that the pieces left were too big and too heavy for him; but the foreman responded, "Bring them in, right away, quick. We need them for building fires." Plaintiff was a stout, heavy man, weighing about 192 pounds, was strong and healthy, and, prior to this time, had never been sick.

At the conclusion of all the evidence, the defendant moved for a directed verdict, on the ground that the plaintiff assumed the risk; that it was incident to his employment; that whatever injury he sustained was due to the risk that he assumed; that no negligence could be charged to the defendant. This motion was overruled, and the case submitted to the jury, and it returned a verdict for plaintiff.

The injury sustained by the plaintiff consisted of a rupture, due to overexertion in attempting to carry this heavy piece of wood. It is apparent that plaintiff's injuries were due to his effort in attempting to carry a piece of wood too heavy for him to carry; that he was directed by defendant's foreman to carry wood from the yards to the roundhouse, a distance of about a block and a half; that defendant's foreman was informed that the wood was heavy, and that plaintiff needed a helper; that plaintiff had done this work many times before. There is no evidence that the defendant knew the character of the wood which he ordered plaintiff to carry. There is evidence that the

plaintiff knew, or at least assumed to know, and so informed the foreman; that he had observed this piece, and that it was too heavy for him to carry. However, he undertook to carry it to the roundhouse.

There is but one question in this case: Did the plaintiff assume the risk incident to the act which he undertook to perform? If, as a matter of law, he did assume the risk, then, of course, under the authorities, he cannot complain of injuries which arose from the risk assumed.

The doctrine of assumption of risk is not of very ancient origin. The doctrine rests on the thought that the employee, upon entering the employment of the master, assumes all the risks that are ordinarily and usually incident to the service upon which he enters, and if he is injured solely by reason of these perils, he is not entitled to recover. It is expressed in the words "volenti non fit injuria." The real foundation rests on the thought that he has voluntarily entered the employment, with knowledge of the perils to which he subjects himself when he enters, and the assumption is that he is paid for the extra hazard incident to the perils, be they great or small. This is another way of saying that the law imposes upon the servant the hazards which are usually and ordinarily incident to the employment in which he engages, when such hazards are not traceable to any dereliction of duty on the part of the master, and their existence is not due to any negligence on the part of the master. Negligence rests in tort, or the omission of some duty. Where the risk is not traceable to this, but inheres in the very employment, as an incident to it, and usually and ordinarily attends it, then the servant is said to have assumed such risk, and cannot complain of injury. The reason why he cannot complain is that the injury is not traceable to any dereliction of duty on the part of the master. The very thought that the servant assumes the risk suggests that no duty resting on the master has been vio-

lated, to the injury of the servant; or, in other words, that the injury is not traceable to the negligence of the master. Assumption of risk is recognized and enforced by the courts, except where the servant has been relieved from its operation by an express statute.  Frequently, risks due to the negligence of the master are said to have been assumed by the servant, when he continues work with knowledge of the negligence and the peril incident thereto, without complaint and without promise of remedy.  This is not properly the assumption of the risk here under consideration.  It is more proper to say, in the last instance, that the act of the servant in continuing in the employment after discovering the negligence of the master, without complaint and without promise of repair, is a waiver of such negligence.  The last must be pleaded by the defendant if he would avail himself of it, but the other need not.  The ordinary risks which the servant assumes are such as are incident to his employment, risks ordinarily incident to the service upon which he embarks, of which he has notice, or which are patent and obvious to him.  To put the matter more succinctly, the servant assumes all risks, on entering the employment, which are incident to the employment, but does not assume the risks which are not usually and ordinarily incident to the employment.  Carelessness and negligence on the part of the master are not incidents of the servant's employment, and the servant does not assume the risks arising therefrom.  The theory of the law is that one who engages in hazardous employment, where dangers usually and ordinarily attend the employment, and he knows the perils upon which he enters, and receives injuries traceable to these perils, he cannot complain.  The presumption is that, upon entering employment of that character, he receives compensation commensurate with the dangers that are incident to the employment, and assumes the perils from this danger.

In the instant case, the plaintiff had observed and had formed an opinion as to the size and character of the log, before undertaking to remove it from the pile to the round-house. He knew, or should have known, his own strength, his ability to transport the log from one point to the other. There is no evidence that the master had any knowledge of the character of the log, other than such as came to him from the plaintiff, to wit, that it was too heavy for the plaintiff to carry, and plaintiff needed a helper in trans-porting it. The defendant had done nothing to create the condition. It existed there, with the full knowledge of the plaintiff, at the time he undertook the service of transport-ing this log to the roundhouse. We might remark—though the remark is not essential to a proper determination of the case—that the plaintiff had shouldered the log and had transported it some distance before he was injured. He was not injured in the act of lifting the log, but on his journey from the place where he had taken the log upon his shoulder to a point some distance away, at which he says the injury occurred. He had then ascertained the size of the log and his ability to handle it. No act of the master inter-vened, negligent or otherwise. If he was not able to carry the log without injury to himself, after he had raised it to his shoulder, or if he was doubtful of his ability to do so, after testing the weight of the log, the matter was fully known to him when he attempted to carry it to the round-house. There is nothing in the record that indicates that his inability was any more apparent to the defendant's fore-man than it was to the plaintiff.

Plaintiff was better able to judge—in a better posi-tion to know his ability or inability to transport the log— than the foreman could possibly have been. Yet with this knowledge,—knowledge superior to that of the foreman,— he chose to accept the service, and carry the log to its desti-nation; and so assumed the risk.

In *Stenvog v. Minneapolis Transfer Co.*, 108 Minn. 199 (121 N. W. 903), a servant was injured by overstraining his muscles and exerting himself in lifting heavy weights. Held that the master is not liable, as the servant is the judge of his own strength, and that this is so even though the work is attempted at the immediate direction of the master. In that case, the defendant took the plaintiff from work in which he was engaged, and for which he was especially employed, and directed him to assist another servant in loading heavy switch rails into a box car. After plaintiff had been at work about thirty minutes, he found it became too heavy for him, and he complained to the foreman that he could not do the work, because it was too heavy for him. The foreman, however, gave no heed to his complaint, but had him go on, until, in lifting one of the heavier rails, he strained his back. The court, in disposing of the case, cited *Worlds v. Georgia R. Co.*, 99 Ga. 283 (25 S. E. 646). In that case, the plaintiff was directed to lift and carry a cross tie too heavy for him. Nevertheless, he was directed to "tote them." In that case, it was held that the servant was bound to take notice of the ordinary and familiar laws of nature applicable to the subject to which his employment relates, and if he fails to do this, and in consequence is injured, the injuries are attributable to the risk of the employment, and the master is not liable.

In *Ferguson v. Phoenix Cotton Mills*, 106 Tenn. 236 (61 S. W. 53), plaintiff was ruptured, while attempting to lift a truck wheel out of a drainage hole. It was held that there was no liability on the part of the defendant.

In *International & G. N. R. Co. v. Figures*, 40 Tex. Civ. App. 255 (89 S. W. 780), the injured party was engaged in loading scrap iron, under the direction of appellant's foreman. The foreman ordered the injured party and another to take up and load into the car a piece of iron or steel. In lifting it, or attempting to put it into the car, the other

party's foot slipped, as a result of which the iron was thrown against the appellee, and he was injured. The negligence charged lies in the order of the foreman to load the iron. In that case, the sole ground of negligence charged against the appellant was that the foreman, Long, ordered appellee and Caldwell to take up and load into the car the piece of iron which the foreman knew to be too heavy to be safely handled by two men alone. The court said that the danger lay in its weight; that this was a matter fully within the observation of appellee; that he was familiar with and had experience in handling iron; that whatever danger, if any, there might have been in lifting and loading the iron, was a matter so open to common observation as to be necessarily perceivable by any man of ordinary understanding. It was said:

"But even if appellee did not know, and by the use of ordinary care could not have discovered, before taking hold of the bolster, whatever danger there was, if any, in two men undertaking to lift and load it into the car, certainly he had but to take hold of it, preparatory to lifting it, to discover, as fully as could have been known to Long, whether he and Caldwell could handle it with safety."

In undertaking, with the assistance of another, to lift and load the bolster into the car, appellee must be held to have assumed whatever risk there was in doing so on account of the weight of the piece. It was held that plaintiff could not recover.

See also *Ferguson v. Phoenix Cotton Mills,* 106 Tenn. 236 (61 S. W. 53), supra. In that case, plaintiff was employed as a laborer in defendant's mills. It was one of his duties to remove wet cotton packed in large boxes. It was claimed that there was defective construction of the floor. His injury was caused by the circumstance that one of the wheels of the truck used in transporting the cotton fell into a hole in the floor. The plaintiff and another tried

to lift the truck out of the hole.   He was ruptured by the strain of lifting.   The court said:

"If the wheel of the truck had gone into the hole, and it was the duty of the employee to lift it out, then he cannot hold the master liable for overexerting and straining himself.   He is the best judge of his own lifting capacity, and the risk is upon him not to overtax it."

In *Roberts v. Indianapolis Street R. Co.*, 158 Ind. 634 (64 N. E. 217), the plaintiff was in the employ of the company, as conductor on one of its lines.   One of his duties was to turn the cars at a certain point on a turntable.   It was claimed that the turntable was defective, and did not work; that plaintiff undertook, with the assistance of another, to turn it, and in his effort to turn it, strained himself, and was injured.   The court said:

"Conceding that appellee, under the alleged facts, was guilty of negligence in failing to keep the turntable in proper repair, nevertheless, the complaint, under its averments, clearly establishes that appellant, in exerting or straining himself in turning the table, was also guilty of negligence, which contributed as a proximate cause to the injuries which he sustained; hence the case is ruled by the maxim of *damnum absque injuria,* and he cannot recover in this action.   Appellant was under no obligation to appellee to overexert or strain himself in his effort to turn the table, and certainly, under the circumstances, appellee company could not anticipate or foresee that, by reason of its failure to repair the table, there was any necessity to protect appellant against his own voluntary action in subjecting himself to the overexertion or strain which resulted in the injury of which he complains.   He is shown to have known of the condition of the table, and, from his previous experience in the operation thereof, he certainly was aware of the extra effort or force that was required to operate the table.   He is presumed to have known his own strength,

and, in fact, he himself was the only one who, under the circumstances, could measure the extent to which he could safely exert himself, in his effort to turn the table. * * * The company neither exacted nor had the right to exact of him any overexertion of his strength in turning the table; hence he assumed whatever risk there was due to such overexertion or strain, to which he voluntarily subjected himself."

See also *Leitner v. Grieb,* 104 Mo. App. 173 (77 S. W. 764). This was an action to recover damages for injury from overstraining. The injury was caused by handling stones too heavy for handling. It appears that, at the time of the injury, the plaintiff and another workman were required by the defendant to remove a large stone to a trench which had been dug for a foundation. Both the plaintiff and the other suggested to the defendant that, on account of the great size of the stone, they ought to have another man to assist them. The defendant told them to roll the stone into the ditch; that, if they could not, they should "leave the job," or words to that effect. They undertook to roll the stone, and in the effort, the bar slipped. Plaintiff had the bar over his shoulder, and when the slip came, the additional weight was thrown upon it, and caused the bar to slip upon plaintiff's arm, and he was severely injured. The court said:

"The injury to the plaintiff was not the result of any apprehended danger, but of the effort upon the part of the plaintiff and his fellow workman to accomplish that which was beyond a reasonable exertion of their powers."

The court further said:

"The question is, therefore, one of principle. * * * The master directs his servant to perform a certain service; the servant objects, because he thinks it beyond his power to perform it, alone and unaided, or that he ought to have assistance in the work; the master tells him that, if he does

not choose to undertake it, to quit his service. The servant does, however, attempt to perform the service, and is in-jured, not by reason of any defect in the tools or appliances, or the place furnished for the servant, but because he has undertaken that which he knows is beyond the reasonable exercise of his power. * * * Here, the servant assumed the risk. To hold otherwise would be holding that the master is an insurer of the safety of his servant while in his employ."

See also *Jones v. Pioneer Cooperage Co.*, 134 Mo. App. 324 (114 S. W. 94) ; *Texas & Pac. R. Co. v. Miller*, 36 Tex. Civ. App. 240 (81 S. W. 535). In *Bonn v. Galveston, H. & S. A. R. Co.*, (Texas) 82 S. W. 808, an action to recover damages for an injury from overexertion, it was held that the order directing the plaintiff and another to carry cer-. tain heavy loads, without providing sufficient assistance, was actionable; but in that case, the distinction was made in that it was shown in the record that the plaintiff was in-experienced. See also *Haviland v. Kansas City, P. & G. R. Co.*, 172 Mo. 106 (72 S. W. 515).

The general rule, therefore, is that an employee who injures himself by overlifting or overstraining or overexert-ing himself in handling weights or other heavy bodies, though it be in the line of his employment, cannot hold the master liable for injuries which result from such over-straining; and this because he is a much better judge of his own strength,—in fact, is the sole judge of his own strength. This, though the work is attempted under the direction of the master. The risk of injuries of this char-acter is assumed by the servant.

We are not without authority in our own court on this proposition. *Kerlin v. Chicago & N. W. R. Co.*, 149 Iowa 440. In this case, the plaintiff was in the service of de-fendant, as a locomotive fireman. For several hours prior to his injury, he had been in continuous service, without

rest and without sleep. He was directed by the defendant's foreman to run a train from Sioux City to Missouri Valley. He informed the company of his condition; that he had been subject to hard service, and was worn out. He was, however, directed to take his engine and a train, and he consented to do so. The court said:

"If his physical exhaustion had reached that degree which rendered it doubtful whether he could do an additional two or three hours' labor as fireman, and he was not himself conscious of the fact, there is nothing in the record to indicate that such condition was any more apparent to the foreman than it was to himself. Indeed, as we have already said, the natural inference is that he was better advised of his ability or want of ability to stand the strain than the foreman could possibly have been; and if, with this knowledge, or superior means of knowledge, he chose to accept the service, he must be held to have assumed the risk."

See also *Rook v. Davenport, R. I. & N. W. R. Co.*, 182 Iowa 227.

It is our conclusion that the court should have sustained the motion for a directed verdict at the conclusion of the evidence, and the cause is, therefore,—*Reversed.*

PRESTON, C. J., SALINGER and STEVENS, JJ., concur.