### WARDEN-PULLEN COAL CO. v. WALLACE.

No. 26439.   March 17, 1936.

Rehearing Denied April 21, 1936.

G. L. Bynum and C. J. Pinkston, for plaintiff in error.

C. W. Schwoerke, A. L. Jeffrey, and Carland Smith, for defendant in error.

PER CURIAM. This suit was brought by defendant in error on behalf of herself and her three minor children, against the plaintiff in error, to recover damages for the death of her husband. There was judgment for the plaintiff, and the defendant appeals. For convenience the parties will be referred to as they appeared in the lower court.

James C. Wallace, the husband of the plaintiff herein, was employed at the coal mine of the defendant, the Warden-Pullen Coal Company, in the area known as the Henryetta coal field, in the dual capacity of fireman and engineer. As engineer, it was his duty to operate the hoist in the shaft of the mine by the use of various levers and mechanisms for that purpose. As fireman, he shoveled coal into the boilers which generated the steam used in operating the hoist. The boiler room and the engine room were in frame buildings situated about 30 feet apart. The boiler room was upon a slightly lower level than the engine room, and there was a short flight of three or four steps leading from one level to the other. In the performance of his duties, he was called upon to pass from one building to the other.

On September 12, 1932, the evidence shows that James C. Wallace was seated in a wheelbarrow just outside the engine room. He was talking to one Joe Ferreo, and had been so engaged for 15 to 20 minutes just prior to his death, during which time he had supplied fresh coal to the fire under the boilers one time and had returned. The two men were discussing commonplace topics, and there was nothing in Wallace's demeanor to give any hint of physical distress or trouble. He attempted to rise from the wheelbarrow and fell over dead. The deceased was 47 years of age, medium height, and weighed approximately 250 pounds, and had been in apparently good health. He had not visited a doctor for some years previously, and there is no evidence that either he or the defendant had knowledge of any physical infirmity. The deceased had been in the employ of the defendant for approximately seven years and had been a coal miner in the Henryetta field for many years.

At the close of plaintiff's evidence, the defendant demurred to the evidence and asked for an instructed verdict for the defendant at the close of the case. Both of these motions were denied and exceptions saved.

The mere fact that plaintiff's husband died while in the emp'oy of the defendant does not render it liable for the damages which she has sustained by his death. In order for the plaintiff to recover, she must prove that there existed a duty upon the part of the master to protect the servant from injury, a failure upon the part of the master to perform that duty, and injury to the servant proximately resulting from such failure.

Counsel for plaintiff seek to fasten liability upon the defendant by asserting, first, that the defendant is liable because it failed to provide a safe place for the servant to work. This unsafe condition was alleged to have existed by reason of the extreme heat that prevailed in the boiler room. There was no contention that the boiler room was not supplied with the usual and reasonably adequate means of ventilation in the form of windows and doors, but the position is that the heat from the boiler, augmenting the high seasonable temperature that prevailed in the locality at that time of the year, rendered it an unsafe place in which to work. While there is no proof of the exact degree of heat, this court is satisfied that it was very warm in the boiler room upon the day that plaintiff's husband reached the end of his allotted time while seated upon a wheelbarrow in the shade of the building. The court is also satisfied that at the same time it was very warm in several hundred thousand kitchens in this state, where Oklahoma housewives were preparing the food for the sustenance of their families. The employer is not an insurer; his only obligation is to furnish such a place to work as a reasonably prudent person would furnish under like circumstances. If plaintiff's position is tenable, industry must be shut down and the ordinary routine of the farm and home suspended during the summer, but such is not the case. As a matter of common knowledge

and observation, the factory and workshop continue to operate, and the mechanic performs his wonted labor; the farmer goes about his accustomed work, the wife attends to her household duties, and life in general proceeds as usual, with some discomfort perhaps, but without an appreciable effect upon the well-being of our citizens. The rule sought to be established by plaintiff would lead to this anomaly: That the average person, whose conduct is the yardstick by which defendant's duty to plaintiff is measured, would himself be guilty of negligence in the running of his daily affairs. This cannot be. We, therefore, hold, as a matter of law, that under the proof the defendant was not guilty of negligence in failing to furnish to the deceased a safe place to work.

Liability is next predicated upon the proposition that the death of the deceased was the result of overexertion in attending to the manifold duties required of him by the defendant. The plaintiff proved by a former mine inspector, and others, that it was customary in the Henryetta coal field to employ both a fireman and an engineer. On the other hand, it appeared that the defendant's mine was operating at about one-third of its capacity, which was, no doubt, the reason that plaintiff's husband was called upon to act in the dual capacity. At any rate, there is no question that the deceased accepted the employment voluntarily, with full knowledge of the services he was expected to perform. It seems reasonably certain from the evidence that Wallace died as a result of a heart affection, but assuming for the sake of argument that overexertion in the performance of the duties of his employment was the cause of his death, was the defendant liable?

We repeat that negligence is a violation of a legal duty owed by the master to the servant. We know of no rule of law that imposes upon the master the obligation to supervise the contracts of employment which the servant may enter into with him and other parties in order to protect him from exertions beyond his strength. The right freely to enter into contracts of employment and to agree upon the terms thereof is one of the most sacred prerogatives of a free people, and even the state itself cannot infringe upon this right, except under the police power to protect the public health and welfare. Justice Crew, in the case of Cleveland v. Clements Bros. Construction Company, 67 Ohio St. 197, 65 N. E. 885, 59 L. R. A. 775, has so well expressed the general

rule that we can do no better than quote his language:

"Doubtless the Legislature might, in the absence of contract between the parties, prescribe the number of hours' labor that should constitute a day's work, but it is not in the power of the Legislature, by the enactment of a positive law, to abridge the right of parties to fix by contract the number of hours that shall constitute a day's work, nor to deny effect to the stipulations and agreements of the parties themselves touching such matter, except only as the exercise of such power may be authorized for the common welfare; and the right to so exercise this power of restraint extends only to matters affecting the public welfare or the health, safety and morals of the community."

The police power is vested in the state as the sovereign, to be exercised by the Legislature, the constitutional agency for the expression of the state's legislative will. The mining industry of Oklahoma, assuming that a custom of the industry would have the force and effect of law—which we think it would not—would not be invested with any part of the police power, which is an attribute of sovereignty. Consequently, a custom of the industry which undertakes to regulate the terms of employment between the employer and the employee would not be binding; nor would its violation constitute negligence.

From the very nature of the case, the servant is the best judge of his own physical strength, and the duty is on him, in the absence of an emergency, not to overtax himself. If he is required by the master to go beyond his capacity, the law of self-preservation demands that he quit the master's employment. Certainly, if he misconceives his own strength or the requirements of the task undertaken, he cannot hold the master liable for an injury that he might suffer thereby. Louisville, etc., Ry. Co. v. Sawyers, 169 Ky. 671, 184 S. W. 1123; Sandy Valley & Elkhorn Ry. Co. v. Tackitt, 167 Ky. 756, 181 S. W. 349, L. R. A. 1916D, 445; Worlds v. Georgia Ry. Co., 99 Ga. 283, 25 S. E. 646; Leitner v. Grieb, 104 Mo. App. 173, 77 S. W. 764; Ferguson v. Phoenix Cotton Mills, 106 Tenn. 236, 61 S. W. 53; Roberts v. Indianapolis Street Ry. Co., 158 Ind. 634, 64 N. E. 217; Stenvog v. Minnesota Transfer R. Co., 108 Minn. 199, 121 N. W. 903.

We quote from Louisville, etc., Ry. Co. v. Sawyers, supra, as follows:

"The only safe and practical rule is that each man is the best judge of his own physical strength and powers of endurance; that

he knows better than any other can, when the limit has been reached and when, in following his own instinct of self preservation, he must desist and exercise his right under the law to give up his work if it is more than he can stand."

We are of the opinion that the plaintiff did not prove facts sufficient to make out a cause of action against the defendant, and that the court should have instructed the jury to return a verdict for the defendant. In view of our conclusion, we have not passed upon the other assignments of error. The judgment of the lower court is, therefore, reversed and the cause remanded for proceedings in accordance with this opinion.

The Supreme Court acknowledges the aid of Attorneys Lawrence Mills, C. H. Rosenstein, and A. M. Widdows in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Mills and approved by Mr. Rosenstein and Mr. Widdows, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, PHELPS, CORN, and GIBSON, JJ., concur.